[No. A129650. First Dist., Div. Five. Sept. 28, 2011.]

METIS DEVELOPMENT LLC et al., Cross-complainants and Respondents,
v.
CORTLAND BOHACEK et al., Cross-defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.B. and C.

COUNSEL

Orrick, Herrington & Sutcliffe, Yvonne Penas Greer; Freitas Tseng Baik & Kaufman and Robert E. Freitas for Cross-defendants and Appellants.

Sayar Fausto and Mario Fausto for Cross-complainants and Respondents.

OPINION

NEEDHAM, J.—Appellants Cortland Bohacek and Puja Bohacek, in her capacity as trustee of the 2000 Bohacek Family Trust, appeal from an order denying their petition to compel arbitration of claims alleged against them in a cross-complaint filed by respondents. They contend (1) the order must be

reversed due to the court's refusal to issue a statement of decision; (2) the court erred in finding that they waived their right to arbitrate; and (3) the court erred in denying their petition on the ground that there would be a possibility of conflicting rulings on common questions of law or fact.

In the published portion of our opinion, we conclude that the trial court erred in failing to issue a statement of decision under Code of Civil Procedure section 1291 and the appellate record does not support the denial of arbitration under Code of Civil Procedure section 1281.2, subdivision (c). In the unpublished portion of our opinion, we conclude that the waiver finding was erroneous. We will therefore reverse the order and remand for further consideration consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY[1]

MPC 823 LLC (MPC 823) is a limited liability company that was formed to pursue the development of residential property in Menlo Park. Its members are appellant Cortland Bohacek and respondent Metis Development LLC (Metis). The members of Metis are respondents Richard Wellman (Wellman) and Carol Bennett (Bennett).

### A. *The MPC 823 Operating Agreement and Arbitration Provision*

Cortland Bohacek and Metis, by its members Wellman and Bennett, entered into the MPC 823 "Operating Agreement" effective January 1, 2008. Section 2 of the Operating Agreement required Metis to make specified capital contributions, and other provisions of the agreement spelled out additional rights and duties.

Section 8.8 of the Operating Agreement provided for the arbitration of disputes, reading in part as follows: "Any controversy or claim arising out of or relating to this Agreement, the Company or the Members' rights or duties shall be settled by binding arbitration in San Mateo County, California. Such arbitration shall be conducted by JAMS/Endispute or any other judicial arbitration service agreed to by the parties, and judgment upon the award may be entered in any court of competent jurisdiction." A first amended and restated Operating Agreement retained the arbitration provision.

### B. *MPC 823's Default and CBT's Complaint*

In July 2008, MPC 823 obtained a construction loan from Vineyard Bank, N.A. (Vineyard), for the development of certain real property. The loan

---

[1] Almost none of the assertions of fact in respondents' brief are supported by citations to the appellate record. We disregard those assertions that lack record citations. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Goodstein v. Cedars-Sinai Medical Center* (1998) 66 Cal.App.4th 1257, 1260 & fn. 1 [78 Cal.Rptr.2d 577].)

was guaranteed by appellant Cortland Bohacek, the 2000 Bohacek Family Trust, and respondents Metis, Wellman, and Bennett. MPC 823 allegedly defaulted on the loan.

In January 2010, California Bank & Trust (CBT), as the successor to Vineyard's rights under the loan, filed a lawsuit against MPC 823, its members Cortland Bohacek and Metis, the members of Metis (Wellman and Bennett), and Cortland Bohacek and Puja Bohacek in their capacities as trustees of the 2000 Bohacek Family Trust. CBT's complaint sought judicial foreclosure, deficiency judgments, and other relief in regard to the loan on which MPC 823 defaulted.

### C. *The Bohaceks' Cross-complaint Against Metis, Wellman, and Bennett*

On April 14, 2010, appellants Cortland Bohacek and Puja Bohacek, in her capacity as trustee, filed an answer to CBT's complaint along with a cross-complaint seeking indemnity and contribution from respondents Metis, Wellman, and Bennett. The cross-complaint is not in the appellate record.

### D. *Respondents' Cross-complaint Against the Bohaceks and Others*

Also on April 14, 2010, Metis, Wellman and Bennett filed a cross-complaint against Cortland Bohacek, Puja Bohacek in her capacity as trustee, Bohacek Ventures LLC (Bohacek Ventures), and others. This cross-complaint is not in the record either.

On May 14, 2010, Metis, Wellman and Bennett filed a verified first amended cross-complaint against Cortland Bohacek, Puja Bohacek (this time as an individual and in her capacity as trustee), Bohacek Ventures, CBT (as successor to Vineyard), CBT employees (Natalie Taaffe, Sandy Swenson, and Maria Ybarra, for actions taken while Vineyard employees), bookkeeper Karen Polati, and Shade Construction & Engineering, Inc. For convenience, except where necessary to distinguish between the original and amended pleading, we will refer to the amended cross-complaint as "respondents' cross-complaint."

In essence, respondents' cross-complaint alleged that respondents were fraudulently induced to invest in MPC 823 and to become guarantors of its obligations under the Vineyard loan. They purported to assert 19 causes of action, for fraud, negligent misrepresentation, constructive fraud, conspiracy, breach of fiduciary duties, accounting, unjust enrichment, injunction, concealment of material facts, breach of contract, violation of Corporations Code sections 25400 and 25500, rescission under multiple statutes, restitution,

conversion, violation of Corporations Code sections 17254 and 17255, equitable indemnity, comparative indemnity, and contribution.

### E. *Appellants' Case Management Statement*

Appellants filed a case management statement on May 20, 2010, advising the court and respondents that they expected to file, among other things, a petition to compel arbitration.

### F. *Appellants' Petition to Compel Arbitration*

On June 18, 2010, appellants sought an extension from respondents of the time to answer respondents' cross-complaint. An extension was apparently granted to July 6, 2010, at which time appellants filed their petition to compel arbitration as their first and only response to the cross-complaint.

In their petition, appellants asserted that all of the causes of action in respondents' cross-complaint presented a controversy or claim subject to the arbitration provision in the Operating Agreement. In addition, appellants alleged, Cortland Bohacek and Metis were bound by the arbitration provision as signatories to the Operating Agreement, Puja Bohacek could enforce the arbitration provision because she was alleged to have offered and sold membership interests pursuant to the Operating Agreement, and Wellman and Bennett could be compelled to arbitrate because they asserted claims as members of signatory Metis.

Respondents opposed the petition, filing a joint declaration by Metis, Wellman and Bennett and a memorandum of points and authorities. Respondents argued that the petition should be denied because (1) the Bohaceks waived their right to arbitrate (Code Civ. Proc., § 1281.2, subd. (a)), (2) there were grounds for revocation of the Operating Agreement, and (3) the parties to the arbitration agreement are also parties to a pending court action with a third party arising out of the same series of transactions and there is a possibility of conflicting rulings on a common issue of law or fact (Code Civ. Proc., § 1281.2, subd. (c)).[2]

### G. *Trial Court's Ruling*

By its tentative ruling of August 4, 2010, the trial court indicated its intention to deny the petition to compel arbitration. The tentative ruling advised in relevant part: "Petitioners have engaged in litigation activity which

---

[2] Unless otherwise indicated, all statutory references hereafter are to the Code of Civil Procedure.

would indicate a waiver of the right to compel arbitration. (See § 1281.2[, subd.] (a); *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 991 [72 Cal.Rptr.2d 43].) [¶] Further, Cross-Defendant Karen Polati is neither alleged to be a signatory to the Operating Agreement, nor has given assent to submitting the dispute to arbitration. Accordingly, there is a possibility of conflicting rulings on common issues of law or fact. (§ 1281.2[, subd.] (c).)"

At the hearing on the petition, appellants' counsel requested a statement of decision on the issues set forth in the tentative ruling. The court declined, reasoning that the proceeding was a "law and motion" matter.

After argument by appellants' counsel and respondents' counsel, the attorney for third party Polati asserted that, if the claims against appellants were sent to arbitration, the possibility of inconsistent rulings would be eliminated if the litigation were stayed as to Polati as well as the Bohaceks. Polati's attorney also agreed with appellants' counsel that the claims of CBT in the complaint were separate from those asserted in respondents' cross-complaint and could proceed in court.

At the conclusion of the hearing, the trial court acknowledged the argument as to Polati but stated that "there are other parties as well, who I think present possibilities of conflicting rulings." The court then directed entry of the order in accord with the tentative ruling, modified to omit the reference to the claims against Polati.

A written order filed August 24, 2010, denied the petition to compel arbitration because "[p]etitioners have engaged in litigation activity which would indicate a waiver of the right to compel arbitration" and "[t]here is a possibility of conflicting rulings on common issues of law or fact."

This appeal followed.[3]

## II. DISCUSSION

As mentioned, appellants contend that the court erred in (1) declining to issue a statement of decision, (2) finding that their right to arbitrate had been waived, and (3) denying their petition due to the possibility of inconsistent rulings. Respondents debate these points and contend further that some of the

---

[3] Bohacek Ventures and Puja Bohacek (in her individual capacity) also filed petitions to compel arbitration, which the trial court denied in separate orders. Those orders are the subject of appeals *Bohacek Ventures LLC v. Metis Development LLC* (Nov. 28, 2011, A130456) (nonpub. opn.) and *Bohacek v. Metis Development LLC* (Nov. 28, 2011, A130457) (nonpub. opn.).

claims in their cross-complaint are not arbitrable, Wellman and Bennett cannot be compelled to arbitrate, and Puja Bohacek cannot enforce the arbitration provision.

## A. *Failure to Issue Statement of Decision*

Section 1291 reads: "A statement of decision shall be made by the court, if requested pursuant to Section 632, whenever an order or judgment, except a special order after final judgment, is made that is appealable under this title." Noting that an order denying a petition to compel arbitration is an order "appealable under this title" (§ 1291; see § 1294, subd. (a)), appellants argue that a statement of decision must be issued if requested pursuant to section 632.[4] Under section 632, where the "trial" is concluded within one day, the request must be made before submission of the matter for decision and may be made orally "on the record in the presence of the parties," "specify[ing] those controverted issues as to which the party is requesting a statement of decision." (§ 632.) Because the hearing took less than a day, and counsel requested the statement of decision before submission of the matter, appellants urge that the court erred in refusing to issue a statement of decision. (See *Whittington v. McKinney* (1991) 234 Cal.App.3d 123, 127 [285 Cal.Rptr. 586] [failure to issue statement of decision upon request under § 632 is reversible error]; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 268 [88 Cal.Rptr.3d 186] [tentative decision or memorandum decision does not satisfy requirement of statement of decision].)

■ We agree. Section 1291 appears in article 1 of chapter 5 of title 9. Title 9 governs arbitration, and article 1 of chapter 5 specifically deals with "petitions," including petitions to compel arbitration and petitions to confirm arbitration awards. (See § 1290 et seq.) Because section 1291 mandates the issuance of a statement of decision in the part of the Code of Civil Procedure that pertains to petitions to compel arbitration, and the denial of a petition to compel arbitration is an appealable order, the logical inference is that the Legislature intended to require the trial court to issue a statement of decision, upon proper request under section 632, when denying a petition to compel arbitration.

---

[4] Section 632 states in pertinent part: "In superior courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. The request must be made within 10 days after the court announces a tentative decision unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision. The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision."

It is true, as respondents point out and the trial court implied, that section 632 has been interpreted to require statements of decision for "trials," not *motions*. (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 294 [123 Cal.Rptr.3d 260] [references to "trial" in § 632 suggest that a statement of decision is required only "in the event of a trial, as that term is commonly understood"]; see *Lien v. Lucky United Properties Investment, Inc.* (2008) 163 Cal.App.4th 620, 624 [77 Cal.Rptr.3d 707] (*Lien*) [general rule is that a statement of decision is not required for an order on a motion].) Indeed, section 632 has been held inapplicable even where the motion involved an extensive evidentiary hearing (*People v. Landlords Professional Services, Inc.* (1986) 178 Cal.App.3d 68, 72 [223 Cal.Rptr. 483] [preliminary injunction]), or the order was appealable (*In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1040 [102 Cal.Rptr.2d 662] [order to pay spousal support and attorney fees]).

We are dealing here, however, with a petition to compel arbitration. Such a petition is heard *in the manner of* a motion, with factual issues determined upon declarations or, if necessary, live testimony. (§ 1290.2; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413–414 [58 Cal.Rptr.2d 875, 926 P.2d 1061] (*Rosenthal*).) But a petition to compel arbitration is " ' "in essence a suit in equity to compel specific performance of a contract." ' " (*Rosenthal*, at p. 411.) Unlike most motions, it provides a final determination of certain factual issues—such as whether the right to arbitrate was waived—and results in an appealable order. Moreover, in ruling on the petition when factual matters are in dispute, the court must weigh credibility and the strength of competing evidence. (*Id.* at p. 414.) As such, a hearing on a petition to compel arbitration has attributes of a trial that suggest the need for a statement of decision to enable meaningful appellate review. (See also *Lien, supra*, 163 Cal.App.4th at pp. 624–625 [noting an exception to the general rule that statements of decision are not required for motions, where the issues are of sufficient importance and appellate review cannot be accomplished effectively without one].) In addition, of all the cases cited by respondents that hold section 632 inapplicable to motions, not one of them involved a petition to compel arbitration; nor did they involve a specific statute—such as section 1291—requiring that a statement of decision be issued whenever requested pursuant to section 632.

■ While section 632 requires a statement of decision only upon "the *trial* of a question of fact by the court" and refers to "the principal controverted issues at *trial*" and "any party appearing at the *trial*" (italics added), construing section 632 and the term "trial" to permit the issuance of a statement of decision only in the event of a traditional trial would render section 1291 meaningless. The hearing on a petition to compel arbitration is not a trial in the traditional sense; nor is a traditional trial required for any of the appealable orders for which section 1291 requires a statement of decision.

(See § 1294.) A strict construction of the term "trial" in section 632 would thus always preclude the issuance of the statement of decision mandated by section 1291. To harmonize sections 1291 and 632, we therefore must conclude that, at least where there is an adjudication of a question of fact by the court in deciding a petition to compel arbitration, a request for a statement of decision in the *manner* required by section 632 obligates the court to issue one. (See *Painters Dist. Council No. 33 v. Moen* (1982) 128 Cal.App.3d 1032, 1042 [181 Cal.Rptr. 17] [in the context of a petition to confirm an arbitration award, under the earlier language of § 1291 requiring findings of fact and conclusions of law, § 1291 must be read in light of § 632, which requires findings only upon the trial of a question of fact, not where the issue is only one of law].)[5]

■ As applied here, there is no dispute that appellants complied with section 1291 by requesting a statement of decision "pursuant to Section 632," in the sense that the request was timely and in proper form. Nor do respondents argue in their briefs that appellants' counsel failed to sufficiently identify the controverted issues for the court. Indeed, counsel's reference to the court's tentative ruling appears adequate under these circumstances, and any elaboration would have been futile given the court's denial of the request on the general ground that it was a "law and motion" matter. With the requisites of sections 632 and 1291 met, the court was required to issue a statement of decision, specifying the factual and legal basis for its decision as to the principal controverted issues: whether appellants waived their right to arbitrate and whether there was a possibility of conflicting rulings on a common question of law and fact, such that arbitration should be denied.

■ Although the court refused to prepare a statement of decision, we must next consider whether the court's written order might have nonetheless satisfied the requirements and purposes of a statement of decision. To comply with a request for a statement of decision, a court need only fairly disclose its determinations as to the ultimate facts and material issues in the case. (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513 [75 Cal.Rptr.3d 771].) "When this rule is applied, the term 'ultimate fact' generally refers to a core fact, such as an essential element of a claim. [Citation.] Ultimate facts are distinguished from evidentiary facts and from legal conclusions. [Citations.]" (*Ibid.*)

---

[5] A number of cases have held that a statement of decision was not required under section 1291 for the adjudication of a petition to confirm an arbitration award, because no statement of decision ·was *requested*. (See, e.g., *Agri-Systems, Inc. v. Foster Poultry Farms* (2008) 168 Cal.App.4th 1128, 1134–1135 [85 Cal.Rptr.3d 917]; *Stermer v. Modiano Constr. Co.* (1975) 44 Cal.App.3d 264, 271–272 [118 Cal.Rptr. 309].) These cases do not expressly hold, but perhaps imply, that a statement of decision would have been required if requested.

■ Here, the court's written order specified that "litigation activity" amounted to a waiver under section 1281.2, subdivision (a), and there was a "possibility of conflicting rulings on a common issue of law or fact" for purposes of section 1281.2, subdivision (c). To deny arbitration due to waiver under section 1281.2, subdivision (a), however, there must be not only "litigation activity," but also prejudice. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1203 [8 Cal.Rptr.3d 517, 82 P.3d 727].) The court made no finding as to prejudice. ■ To deny arbitration due to a possibility of conflicting rulings on common issues under section 1281.2, subdivision (c), there must be not only the possibility of conflicting rulings, but a determination that this possibility should lead to the denial of arbitration, rather than one of the other alternatives set forth in the statute. The court did not explain its factual or legal basis for this decision, or even state that the denial of arbitration was the best of the available alternatives. We also note that, while the tentative ruling had identified the claims against Polati as the basis for the court's finding of a possibility of conflicting rulings, the final written order omitted the reference to Polati and contained no basis for the finding. As we shall see *post*, the brevity of the court's order also makes appellate review difficult. (See *In re Marriage of Fong, supra*, 193 Cal.App.4th at p. 293 ["statement of decision facilitates appellate review by revealing the bases for the trial court's decision"].) Respondents offer no substantial argument to the contrary.[6]

We conclude that the trial court failed to meet its obligation to issue a statement of decision under section 1291. On this basis, given the existence of evidence that could have led to a ruling in appellants' favor, the order denying appellants' petition to compel arbitration could be reversed outright. (See *Triple A Management Co. v. Frisone* (1999) 69 Cal.App.4th 520, 536 [81 Cal.Rptr.2d 669].) Nonetheless, we will continue our analysis of the issues in this appeal, both to assist the parties and the court upon remand and to provide the foundation for our disposition of appeals from similar rulings

---

[6] At oral argument in this appeal, respondents' counsel pointed out that section 1291 requires only an oral statement of decision for matters concluded within a day. On this basis, respondents' counsel argued for the first time that the trial court orally complied with its obligations. Not so. At the hearing, the court declared: "And the only statement [of] decision, Counsel, that you'd be receiving would be *a form of order submitted in the normal course*. I'm *not going to write up a state of procedure* [*sic*] with law and motion." (Italics added.) That certainly does not sound like the court was undertaking to issue an oral statement of decision, as respondents now urge. Furthermore, even if we ignored the court's expressed intent and looked to the reasons the court eventually stated on the record for denying the motion—as if it were an oral statement of decision—the court's statement would again be inadequate: the court did not mention waiver or prejudice at all, and the court did not explain that the risk of inconsistent rulings on common questions of law or fact would require denying arbitration, as opposed to other statutory alternatives set forth in section 1281.2, subdivision (c).

by other parties in this case (appeals *Bohacek Ventures LLC v. Metis Development LLC, supra*, A130456 [nonpub. opn.] and *Bohacek v. Metis Development LLC, supra*, A130457 [nonpub. opn.]).[7]

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### D.  *Possibility of Conflicting Rulings (§ 1281.2, subd. (c))*

■  If "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact," the court may pursue one of several options, including denying arbitration so that all issues between all parties are resolved in the judicial proceeding; compelling arbitration to the extent the issues are arbitrable and staying the litigation until the arbitration is completed; or staying the arbitration pending resolution of the nonarbitrable issues in the judicial proceeding. (§ 1281.2, subd. (c).)

■  In the matter before us, parties to the arbitration agreement (e.g., Cortland Bohacek and Metis) are also party to claims against other parties (e.g., CBT and its employees) that are not subject to the arbitration provision, and which arise out of the same transaction or series of transactions. The application of section 1281.2, subdivision (c), therefore turns on whether "there is a possibility of conflicting rulings on a common issue of law or fact" if respondents arbitrate their claims against Cortland and Puja Bohacek and proceed with litigation as to nonarbitrable claims. We review the court's determination of this issue for an abuse of discretion. (*Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 101 [284 Cal.Rptr.3d 255].)

The trial court ruled that the possibility of such conflicting rulings existed. However, we are given no idea by the court's order—or by the respondents'

---

[7] We are also mindful that the distinction between ultimate facts, which must be resolved in a statement of decision, and evidentiary facts, which do not, is sometimes a fine one, and whether the court has issued a proper statement of decision can then become a close question. (*Central Valley General Hospital v. Smith, supra*, 162 Cal.App.4th at p. 527.) Because we proceed *as if* the court had met its obligations under section 1291, and presume that the court made the factual findings necessary to support the judgment and review those implied findings for substantial evidence, our ultimate disposition of this appeal would be reached whether or not we concluded that the court erred under section 1291. In addition, the factual questions of waiver and conflicting issues, when decided upon undisputed evidence of what the parties did and what the pleadings allege, come close to questions of law. In that instance, a statement of decision might not be required, but our review would arguably be de novo. Even if we applied de novo review in this case, the disposition would be the same.

*See footnote, *ante*, page 679.

brief in the trial court or the respondents' brief in this appeal—precisely what issues are common to both respondents' claims against Cortland and Puja Bohacek and any other claims in the litigation. Appellants argue that the court's ruling is without basis, because respondents' complaints about the discussions leading up to the Operating Agreement are not alleged to have involved the third parties, and 10 of respondents' causes of action are asserted against Cortland Bohacek, Puja Bohacek, and Bohacek Ventures only, rather than the third parties who are not subject to the arbitration clause.

The closest respondents come to addressing appellants' assertion is a reference to their conspiracy claim and to "representations made by CBT employees regarding Cortland Bohacek's credibility, investment know-how, loan to project ratio, approvals and the projects' likely success."[11] But respondents do not support their argument with any citation to the record. Nor do they explain what causes of action rely on these representations, the extent to which these common questions exist, or why there would be a risk of inconsistent adjudication.

Although unaided by respondents, our own review of the record suggests that it would not be arbitrary or illogical for the court to conclude that there is at least a risk of conflicting rulings on some common questions. Several causes of action are asserted against third parties as well as Bohacek, alleging that Bohacek was able to perpetrate at least some of his alleged fraud and wrongdoing because Vineyard employees essentially vouched for him and contributed to his purported scheme and misdeeds. In addition, respondents contend that Vineyard conspired with and aided and abetted Bohacek in perpetrating the frauds by making representations to respondents that Bohacek was a trusted client, as well as other statements.

However, finding that there is a possibility of inconsistent rulings on common questions does not conclude the analysis under section 1281.2, subdivision (c). As mentioned, the statute gives the court several options, including denying the petition for arbitration, staying the arbitration pending disposition of nonarbitrable claims in the court, or staying the litigation pending completion of the arbitration. (See *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1114–1115 [39 Cal.Rptr.3d 437].) What the trial court chooses to do in this situation is a matter of its

---

[11] In their opposition to the petition in the trial court, respondents asserted: "Respondents allege fraud, negligent misrepresentation, and conspiracy against Bohacek, CBT employees and CBT in Respondents' verified Cross-Complaint which arise from the same set of facts and circumstances relating to the project and investment in MPC 823, including the representations made by CBT employees[] regarding Bohacek's credibility and investment know-how." Presumably, respondents are referring to representations made not by individuals employed at the time by CBT, but by Vineyard employees, for which CBT might be liable as Vineyard's successor.

discretion, guided largely by the extent to which the possibility of inconsistent rulings may be avoided.

In this case, the record does not support the court's decision to deny arbitration entirely. The written order does not include a finding that this option was best, and we cannot discern from the record why it would be reasonable to so conclude, given what transpired at the hearing. The court's tentative ruling was to deny arbitration because of the possibility of inconsistent rulings as to third party Polati. At the hearing, Polati's attorney argued that this possibility of inconsistent rulings would be *removed* by staying the claims against her pending the proposed arbitration, and the court did not disagree. Instead, the court announced at the hearing that there was a possibility of conflicting rulings as to other third parties and adopted the tentative ruling after *striking* the reference to Polati. The court's striking of the reference to Polati seems to indicate that the court accepted her argument that the problem of inconsistent rulings could be remedied by a stay of claims. While we can infer that the other third parties to which the court was referring were CBT and the former Vineyard employees, there is no indication why the possibility of conflicting rulings as to those third parties could not also be resolved by staying the claims against them, given the court's apparent conclusion that it could be resolved by staying the claims against Polati.[12]

Furthermore, although the selection of the statutory alternatives under section 1281.2, subdivision (c) is a matter for the court's discretion, an abuse of discretion may be found when the court proceeds upon a mistaken premise or a factual finding not supported by substantial evidence. (See *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393 [33 Cal.Rptr.3d 644].) Here, the court had concluded that Cortland and Puja Bohacek had waived their rights to arbitrate. While waiver is an independent ground for denying arbitration, we cannot say that the court's ruling would have been the same if it had believed that Cortland Bohacek and Puja Bohacek, in her capacity as trustee, had not waived their rights to arbitrate. In addition, although the court had not at that point decided whether Bohacek Ventures or Puja Bohacek in her individual capacity had waived *their* rights to arbitrate, our holdings in appeals *Bohacek Ventures LLC v. Metis Development LLC, supra*, A130456 (nonpub. opn.) and *Bohacek v. Metis Development LLC, supra*, A130457 (nonpub. opn.), that they did not waive their rights might be a consideration in an analysis under section 1281.2, subdivision (c) as well.

---

[12] We do not decide whether or not staying the claims against Polati or against CBT and the former Vineyard employees would, in fact, remove the risk of inconsistent rulings; our point is simply that the tentative ruling and final order do not appear consistent, based on the record of the hearing.

Given these developments, the state of the appellate record, the paucity of justifications for the court's order in response to appellants' challenge in this appeal, and the strong public policy favoring arbitration, we believe the prudent course is to reverse the order denying arbitration and remand the matter for further consideration under section 1281.2, subdivision (c). On remand, the court should consider (1) whether there is the possibility of inconsistent rulings on common questions of law or fact and (2) whether, on that basis, given the extent and nature of the potential inconsistent rulings, arbitration should be denied as to the claims against Cortland Bohacek and Puja Bohacek in her capacity as trustee.[13]

## III. DISPOSITION

The order is reversed. The matter is remanded for further consideration under Code of Civil Procedure section 1281.2, subdivision (c), consistent with this opinion.

Jones, P. J., and Simons, J., concurred.

On October 19, 2011, the opinion was modified to read as printed above.

---

[13] On a different tack, respondents argue: "Appellants in their Cross-Complaint acknowledged that there is a possibility of multiple actions (therefore also multiple rulings) given the circumstances and allegations made by all of the parties against one another. Appellants, in their Cross-Complaint against Respondents seek Declaratory Relief stating: 'the claim of Plaintiff and claim of Cross-Complainants arise [out] of the same transaction and determination of both claims in one proceeding is appropriate in order to avoid a multiplicity of actions.' " Respondents' argument is incorrect. Appellants referred to the possibility of multiple actions merely to explain that their indemnity claims should be heard in the same case as CBT's claims in order to avoid the inefficiencies of multiple actions. Appellants did not admit there would necessarily be multiple or conflicting rulings if their rights to arbitrate respondents' cross-complaint were enforced.