Filed 10/15/13  Helo Energy v. So. Cal. Edison CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| HELO ENERGY LLC et al., | B244263 |
| Plaintiffs and Respondents, | (Los Angeles County |
| v. | Super. Ct. No. BC481840) |
| SOUTHERN CALIFORNIA EDISON COMPANY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Charles F. Palmer, Judge.  Reversed and remanded with directions.

Brune & Richard, Laurie Edelstein, Seth R. Sias; Southern California Edison Company, Leon Bass, Jr., James J. Ward and Allan D. Johnson for Defendant and Appellant Southern California Edison Company.

Akin Gump Strauss Hauer & Feld, Richard K. Welsh, Hyongsoon Kim and Scott J. Street for Plaintiffs and Respondents Helo Energy, LLC, Sand Canyon of Tehachapi, LLC, Saugatuck Energy, LLC.

_____

Southern California Edison Company (SCE) appeals from an order denying its petition to compel arbitration of a dispute with Helo Energy, LLC, Sand Canyon of Tehachapi, LLC and Saugatuck Energy, LLC (collectively the Helo parties).  The trial court acknowledged the Helo parties' claims against SCE were covered by a valid agreement to arbitrate, but denied SCE's petition under Code of Civil Procedure section 1281.2, subdivision (c),[1] on the ground those claims arose out of the same transaction or series of related transactions as the Helo parties' nonarbitrable claims against third parties and enforcing the arbitration agreement would create a possibility of conflicting rulings.  SCE contends the court erred in denying arbitration under section 1281.2, subdivision (c), because the statutory prerequisites for application of that statute had not been met:  There was no litigation involving parties who were not subject to the arbitration agreement and, even if there was, there was no possibility of conflicting rulings.  Alternatively, SCE contends the court abused its discretion in denying its request to stay the arbitration pending a resolution of the third party litigation.  Although we agree with the trial court that the statutory prerequisites to applying section 1281.2, subdivision (c), were satisfied, we reverse the order denying arbitration.  Where, as here, the potential for conflicting rulings is remote and entirely theoretical and can be eliminated by other means short of denying arbitration, it is an abuse of discretion to deny arbitration entirely.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Sand Canyon Renewable Energy Project*

In November 2008 Heather Kann and David Pitcher, a married couple, formed Sand Canyon of Tehachapi, LLC and acquired the option to purchase real property located in Tehachapi, California. After acquiring the property Sand Canyon of Tehachapi negotiated a power purchase agreement (PPA) in January 2010 with SCE in which the company agreed to develop a wind farm and SCE agreed to purchase a substantial amount of power generated by the wind farm at a fixed price over a 20-year term.  Kann signed the PPA as the managing member of Sand Canyon of Tehachapi.

---

[1]     Statutory references are to the Code of Civil Procedure unless otherwise indicated.

2. *The Helo Parties' Purchase of the Sand Canyon Project*

In August 2010 Helo Energy's predecessor-in-interest, Sand Canyon Holdco, Inc.,[2] bought the Sand Canyon project for $12 million, a purchase that included 100 percent of the membership interests in Sand Canyon of Tehachapi and the company's rights under the PPA. To effect the sale, Kann transferred 100 percent of Sand Canyon of Tehachapi's membership interests to GLJ, an entity Kann formed in May 2010. Then, on behalf of GLJ, Kann transferred those membership interests to Helo Energy.

The Helo parties financed their purchase of the Sand Canyon property and the rights to the PPA by obtaining a $1.5 million loan from Saugatuck, secured by a deed of trust on the Sand Canyon property, and a $5.51 million loan from GLJ, secured by both a second deed of trust on the Sand Canyon property and a pledge by the Helo parties to return 100 percent of the membership interests in Sand Canyon of Tehachapi to GLJ in the event of their default.

The PPA prohibited the assignment of any rights granted by it without SCE's written consent. SCE formally consented to the transfer of Sand Canyon's membership interests, including any interest the company had in the PPA, in a document entitled "Consent to Transfer." SCE also executed a "Consent to Collateral Assignment Agreement" in which it consented to Helo Energy's pledge of 100 percent of its membership interests in Sand Canyon of Tehachapi to GLJ as collateral for GLJ's loan. The consent to collateral assignment was signed by Rudy Saenz (on behalf of Helo Energy), Kann (on behalf of Sand Canyon of Tehachapi) and Marc Ulrich (on behalf of SCE).

3. *The Arbitration Provisions*

Both the PPA and the consent to collateral assignment (but not the consent to transfer) contained arbitration provisions. The PPA provided, "Any and all Disputes which the Parties have been unable to resolve by informal methods after undertaking a

---

2    For ease of reference, we refer to both Sand Canyon Holdco, Inc. and its successor-in-interest Helo Energy as Helo Energy.

good faith effort to do so, must first be submitted to mediation . . . and, if the matter is not resolved through mediation, then for final and binding arbitration" in accordance with the California Arbitration Act. "Dispute" is defined under the PPA to mean "any and all disputes, claims or controversies arising out of, relating to, concerning or pertaining to the terms" of the PPA "or to either Party's performance or failure of performance under this Agreement." The consent to collateral assignment provided, "All disputes, claims or controversies arising out of, relating to, concerning or pertaining to the terms of this Consent shall be governed by the dispute resolution provisions in the [PPA]."

4. *SCE's Termination of the PPA*

Following their purchase of the Sand Canyon project, the Helo parties spent more than $9 million developing the wind farm. In November 2011 SCE notified the Helo parties it was terminating the PPA pursuant to section 2.04(c) of the PPA, which granted SCE the right to terminate if the results of an interconnection study by the California Independent System Operator (CAISO) concluded the costs to SCE of transmission upgrades or new transmission facilities to connect the wind farm facility to SCE's transmission grid would exceed $2.5 million.

5. *GLJ Seeks To Reclaim the Sand Canyon Property*

Soon after SCE terminated the PPA, GLJ notified the Helo parties they were in default of their obligations under the GLJ note and, as a result, it intended to reclaim the property and 100 percent of the membership interests in Sand Canyon of Tehachapi in accordance with the terms of the note. GLJ also persuaded SCE that it, rather than any of the Helo parties, was entitled to the $600,000 development security deposit that, under the terms of the PPA, SCE was required to refund if it exercised its termination rights. SCE refunded the deposit to GLJ.

6. *This Lawsuit*

In March 2012 the Helo parties filed this lawsuit. Helo Energy and Sand Canyon of Tehachapi (in which Helo Energy claimed a 100 percent ownership interest) asserted claims against SCE for breach of contract. Saugatuck separately alleged a claim against SCE pursuant to California Uniform Commercial Code section 9607, subdivision (a),

4

contending it was entitled to the refund of the $600,000 development security deposit as a secured first lien holder on the Sand Canyon project.[3]

In the same lawsuit the Helo parties asserted several fraud-based causes of action against Kann, Pitcher, GLJ, Kent Hoggan and Jeffrey Hoggan and the Hoggans' company, Eagle Energy, LLC (collectively the seller defendants). The first through fourth causes of action for fraud alleged the Hoggans were real estate investors who initially wanted to purchase the Sand Canyon property themselves in 2008 to capitalize on California's emerging market for renewable energy. However, their mounting debt and poor credit—casualties of their multiple real estate investments and ensuing crash of the housing market in 2007 and 2008—precluded them from obtaining the necessary financing. Instead, they devised a plan with Pitcher and Kann to help them acquire the property: Pitcher and Kann formed Sand Canyon of Tehachapi, acquired the right to purchase the Sand Canyon property and, in 2009, agreed to sell the property to Eagle Energy.

The Hoggans then recruited Rudy Saenz, owner of Lightwave Energy, LLC, to assist them in finding investors in the project. When Saenz learned of the Hoggans' mounting liabilities, he balked at providing any further assistance in finding investors. The Hoggans then persuaded Saenz to purchase the project without them. Working with Pitcher and Kann, the Hoggans provided Saenz with a wind report purporting to show very high wind speeds on the property that would support the wind project envisioned by the PPA. Based on this report, Saenz formed Helo Energy, purchased Sand Canyon of Tehachapi, including the Sand Canyon property and Sand Canyon of Tehachapi's rights

---

3    California Uniform Commercial Code section 9607, subdivision (a), permits a secured party to "(2) [t]ake any proceeds to which the secured party is entitled under Section 9315 [of the Commercial Code][;] [¶] [and] [e]nforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor, and with respect to any property that secures the obligations of the account debtor or other person obligated on the collateral."

5

under the PPA. The wind report also persuaded Saugatuck to help finance the project. In fact, the report, on which each of the Helo parties substantially relied, related to a completely different property and had been deliberately altered by the seller defendants to make it appear as though it related to the Sand Canyon property. The Helo parties did not discover the fraud until May 2011. After learning the truth, however, the Helo parties elected to continue developing the wind farm rather than seek rescission of the agreement.

In the fifth cause of action, Helo Energy alleged the seller defendants had failed to disclose Eagle Energy's option rights in the project until after it had purchased the project and SCE had consented to the assignment of the PPA. At that point GLJ refused to provide further financing until Helo Energy paid Eagle Energy $1.1 million to resolve any dispute Eagle Energy might have had over Helo Energy's acquisition of the project. GLJ also required Helo Energy to execute an amendment to the GLJ promissory note releasing Kann and GLJ from any liability for actions relating to the sale of the project. Kann and GLJ claimed the release was necessary to protect them from a lawsuit by the Hoggans concerning GLJ's sale of the Sand Canyon project to Helo Energy. However, this statement was false. The Hoggans and GLJ were working together, and the Hoggans had no intent to sue Kann or GLJ. Had Helo Energy known of the conspiracy, it would not have entered into the settlement agreement and release with Eagle Energy. Helo Energy sought rescission of the settlement agreement and restitution of the monies it paid in consideration for the agreement.

GLJ filed a cross-complaint against the Helo parties for breach of the promissory note obligations and sought declaratory relief as to which entity or individual was the rightful owner of the Sand Canyon property and the membership interests in Sand Canyon of Tehachapi, LLC.[4]

---

[4] While this appeal was pending, Eagle Energy and the Hoggans filed a cross-complaint against the Helo parties, GLJ and related individuals and entities. The cross-complaint asserts each of the cross-defendants fraudulently deprived Eagle Energy and

7.  *SCE's Petition To Compel Arbitration*

On May 14, 2012 SCE petitioned the court to compel arbitration of the Helo parties' claims against it based upon the arbitration provision in the PPA.[5] Although SCE acknowledged Saugatuck was not an assignee of Sand Canyon of Tehachapi's rights under the PPA, it argued Saugatuck's claim to recover the development deposit was based upon, and thus inextricably intertwined with, the terms of the PPA. Thus, it argued, Saugatuck was properly bound to arbitrate its claim in accordance with the arbitration provision in the PPA.

The Helo parties opposed the petition to compel arbitration. Helo Energy and Sand Canyon of Tehachapi acknowledged the validity of the arbitration agreement and its application to their claims against SCE, but urged the court to deny SCE's petition pursuant to section 1281.2, subdivision (c), on the ground none of the seller defendants had sought arbitration and there was a substantial overlap between their nonarbitrable fraud claims against the seller defendants, on the one hand, and their arbitrable breach of contract claim against SCE, on the other hand, which could result in inconsistent rulings. For its part, Saugatuck argued it was not a party to the arbitration agreement and thus was not bound by it in pursuing its claim against SCE.

In reply SCE maintained there was no third party whose interests could be harmed from compelling arbitration since each of the seller defendants was either a signatory of the PPA or a principal, agent or assignee of a signatory and thus bound by the agreement to arbitrate contained in the PPA. Alternatively, it argued the contract claims against SCE and the fraud claims against the seller defendants were legally and factually distinct, thus eliminating any possibility of conflicting rulings; and any possible overlap on the issue of ownership of Sand Canyon of Tehachapi, the subject of GLJ's cross-complaint

the Hoggans of their option rights granted to them by Sand Canyon of Tehachapi in 2009 to purchase the Sand Canyon project.

[5]   Although the petition to compel arbitration mentioned the consent to collateral assignment agreement, it did not seek arbitration under that agreement.

7

and an integral part of Saugatuck's claim against SCE, could be resolved by staying the arbitration until after a trial on the nonarbitrable claims.

8. *The Trial Court's Ruling Denying the Petition To Compel Arbitration*

After holding a hearing and taking the matter under submission, the trial court denied the petition to compel arbitration pursuant to section 1281.2, subdivision (c), finding, without specification (a statement of decision was neither requested nor issued), there was a substantial overlap of law or facts between the arbitrable claim and the nonarbitrable claims proceeding against third parties in a judicial forum.[6]

## CONTENTIONS

SCE contends section 1281.2, subdivision (c), is inapplicable because the seller defendants are not true "third parties" to the arbitration agreement and, even if they were, there is no possibility of conflicting rulings if arbitration were ordered. It also contends, even if section 1281.2, subdivision (c), applies, the court abused its discretion in denying arbitration rather than staying it pending resolution of the third party litigation.

## DISCUSSION

1. *Governing Law and Standard of Review*

Section 1281.2 requires the trial court to order arbitration of a controversy under most circumstances if it determines a valid agreement to arbitrate exists. However, arbitration of a controversy need not be ordered when the court determines that "[a] party to an arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. . . ." (§ 1281.2, subd. (c); see *Pilimai v. Farmers Ins. Exchange Co.* (2006) 39 Cal.4th 133, 141 [under § 1281.2, subd. (c), a party's contractual right to arbitration "'may have to yield if there is an issue of law or fact common to the arbitration and a pending action or

---

6    Kann, GLJ and Pitcher had moved to bifurcate the claims against SCE from the remaining causes of action and stay the prosecution of the claims against SCE until the fraud claims are resolved. In the same order in which the court denied the petition to compel arbitration, the court also denied the bifurcation motion.

8

proceeding with a third party and there is a possibility of conflicting rulings thereon'"]; *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 347 [same]; *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, 475 ["[w]hile there is a strong public policy in favor of arbitration, there is an 'equally compelling argument that the Legislature has also authorized trial courts to refuse enforcement of an arbitration agreement . . . when, as here, there is a possibility of conflicting rulings'"].)

If section 1281.2's prerequisites are met—an issue of law or fact is common to the arbitration and a pending action or proceeding with a third party and there exists a possibility of conflicting rulings—the trial court has four options:  The court "(1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all the parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding."  (§ 1281.2, subd. (c); accord, *DMS Services, Inc. v. Superior Court* (2012) 205 Cal.App.4th 1346, 1367-1358; *Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 691.)

An order denying a petition to compel arbitration under section 1281.2, subdivision (c), is generally reviewed for abuse of discretion.  (*Mercury Ins. Group v. Superior Court, supra,* 19 Cal.4th at p. 349; *Lindemann v. Hume* (2012) 204 Cal.App.4th 556, 565.)  Under this standard we must affirm unless the trial court's order "'exceeded the bounds of reason.'"  (*Mercury,* at p. 349; *Birl v. Heritage Care, LLC* (2009) 172 Cal.App.4th 1313, 1318.)  The question whether section 1281.2, subdivision (c), is properly invoked at all, however, is a legal determination subject to de novo review.  (*Lindemann,* at p. 565; *Birl,* at p. 1318.)

9

2. *The Trial Court Did Not Err in Applying Section 1281.2, subdivision (c)*

a. *Third parties*

SCE contends the court erred in denying its petition to compel arbitration because there is no litigation involving third parties within the meaning of section 1281.2, subdivision (c). (See *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 976-977 ["'trial court does not have discretion to deny arbitration under . . . section 1281.2(c), absent the presence of a third party'"]; *Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1288, fn. 6 ["[t]he court's discretion under section 1281.2, [subd.] (c), does not come into play until it is ascertained that the subdivision applies, which requires the threshold determination of whether there are nonarbitrable claims against at least one of the parties to the litigation (e.g., a nonsignatory)"].)

Relying on cases defining a third party for purposes of section 1281.2, subdivision (c), as "a party to the action that is not bound by or entitled to enforce the arbitration agreement" (*Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 612; accord, *Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1407), SCE posits several theories on which each of the seller defendants (though most were not signatories to the PPA containing the arbitration provision) could have compelled arbitration of the Helo parties' claims: Kann was a signatory to the PPA containing an agreement to arbitrate; Pitcher was an agent of the former Sand Canyon of Tehachapi, a signatory to the PPA; GLJ was a signatory to the consent to collateral assignment agreement, which, like the PPA, contained an arbitration provision; and the Hoggans and Eagle Energy, while not signatories to any arbitration agreement, were the principals and/or agents of signatories who did agree to arbitrate. Because each of the seller defendants could have enforced an arbitration agreement concerning the Helo parties' claims, SCE argues, none is properly considered a third party to the agreement for purposes of section 1281.2, subdivision (c).

The Helo parties respond, because none of the seller defendants has actually sought arbitration, they are necessarily "third parties" to the arbitration proceeding. SCE, on the other hand, insists what matters is that they could have enforced the agreement to arbitrate. Otherwise, it argues, a defendant subject to arbitration could defeat a

10

codefendant's contractual arbitration right simply by waiving arbitration and electing to defend the action in court.

SCE's concern for the effect of a defendant's waiver of arbitration on the arbitration rights of other parties in multi-party litigation ignores the trial court's broad discretion under section 1281.2, subdivision (c), to allow arbitration to proceed as to at least a limited set of arbitrable claims notwithstanding the potential for conflicting rulings in third party litigation. (See *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393 ["[S]ection 1281.2(c) is not a provision designed to limit the rights of parties who choose to arbitrate or otherwise to discourage the use of arbitration. Rather, it is part of California's statutory scheme designed to enforce the parties' arbitration agreements . . . . Section 1281.2(c) [gives the court discretion to] address[] the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement."].) In any event, we need not determine the precise contours of the pending third-party-litigation doctrine here; for, as we explain, the Helo parties' claims against the seller defendants arise out of the purchase and sale of the Sand Canyon project, not out of the PPA or consent to collateral assignment. Because the scope of the PPA's arbitration agreement does not cover the fraud claims asserted against the seller defendants, section 1281.2, subdivision (c), necessarily applies.[7]

As discussed, the PPA requires the parties to that agreement to arbitrate "any and all disputes, claims or controversies arising out of, relating to, concerning or pertaining to the terms" of the PPA "or to either Party's performance or failure of performance under this Agreement." As the successor-in-interest to Sand Canyon of Tehachapi's rights under the PPA, Helo Energy's breach of contract claim against SCE plainly arises under the PPA. Similarly, Saugatuck's claim under the Commercial Code to recover the

---

[7] We review the scope of an arbitration provision de novo when, as here, that interpretation does not depend on conflicting extrinsic evidence. (*RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1522; *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 684; *Lindemann v. Hume, supra,* 204 Cal.App.4th at p. 571, fn. 11.)

11

development deposit as provided in the PPA is rooted in the terms of the PPA, thus making Saugatuck, although a nonsignatory, bound by the agreement to arbitrate under principles of equitable estoppel. (See *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1241 [nonsignatory plaintiff can be compelled to arbitrate a claim when plaintiff's claim itself is based on, or inextricably intertwined with, the contract containing the arbitration clause]; *DMS Services, Inc. v. Superior Court, supra,* 205 Cal.App.4th at p. 1354 [same].)

In contrast, the Helo parties' fraud claims against the seller defendants do not arise out of, relate, concern or pertain to the terms of the PPA or the parties' performance or failure of performance under that agreement. Rather, they concern a wholly separate purchase and sale agreement between Helo Energy and the former Sand Canyon of Tehachapi, one that apparently did not include an arbitration provision. Accordingly, whatever the nature of the relationships is between and among the seller defendants, the Helo parties' claims against them fall outside the scope of the arbitration agreement contained in the PPA. (See *Lindemann v. Hume, supra,* 204 Cal.App.4th at p. 570 ["[e]ven if Levin and Nazarian are bound by the arbitration agreement and could be compelled to arbitrate certain disputes arising from the sale of the Ocean Front Walk property . . . their claims for indemnity from the Hancock Park defendants are outside the scope of the arbitration provision, which covers only disputes between the seller and the buyer, not internecine disputes among members of the seller's team of advisors"]; see also *JSM Tuscany, LLC v. Superior Court, supra,* 193 Cal.App.4th at p. 1240, fn. 20 [noting inability to enforce agreement to arbitrate may be based on the theory that the claims fall outside the scope of the agreement to arbitrate].)[8]

---

8    Because there are no claims asserted by or against the seller defendants arising out of the PPA, this is not a case where some claims between the Helo parties and the seller defendants will be subject to arbitration and some will not. (Cf. *Laswell v. AG Seal Beach LLC, supra,* 189 Cal.App.4th at p. 1409 ["[A] plaintiff's inclusion of a nonarbitrable cause of action in the complaint is not grounds to deny arbitration under the third party exception. In other words, the presence of a nonarbitrable cause of action [asserted against a party who has agreed to arbitrate] is not sufficient by itself to invoke

12

SCE's reliance on Helo Energy's execution of the consent to collateral assignment agreement is similarly misplaced.  Like the PPA, the arbitration agreement in the consent to collateral assignment is limited in scope:  It requires arbitration of all "disputes, claims or controversies arising out of, relating to, concerning or pertaining to the terms of this consent."  Because the Helo parties' claims against the seller defendants do not relate to SCE's consent to Helo Energy's use of its membership interests in Sand Canyon of Tehachapi as collateral for GLJ's loan, they are also outside the scope of that agreement to arbitrate.

### b. *The possibility of inconsistent rulings*

SCE also contends the court erred in concluding there was a possibility of conflicting rulings on a common issue of law or fact because the fraud claims, on the one hand, and the breach of contract claim, on the other hand, are factually distinct:  The contract claim centers on whether SCE had the right to terminate the PPA based on the results of a study showing unduly high interconnection costs.  The fraud claims are based on alleged misrepresentations made to the Helo parties by the seller defendants.

SCE's characterization of the different causes of action alleged in the complaint is sound.  Nonetheless, its conclusion there is no possibility, however remote, of conflicting rulings on a common issue of law or fact is incorrect.  To recover for breach of contract against SCE, Helo Energy and Sand Canyon of Tehachapi must show they fully performed under the PPA, that is, they developed the wind farm contemplated in the PPA.  (See *County of Solano v. Vallejo Redevelopment Agency* (1999) 75 Cal.App.4th 1262, 1276 [to recover on breach of contract claim, plaintiff must show he either fully performed under contract or had ability to perform and was prevented from performing

the trial court's discretion to deny arbitration . . . under section [1281.2, subd. (c)]."]; *RN Solution, Inc. v. Catholic Healthcare West*, *supra*, 165 Cal.App.4th at p. 1522 [when action against party who has agreed to arbitrate includes both arbitrable and nonarbitrable claims, court's discretion under § 1281.2, subd. (c), is limited to delaying the arbitration if it determines that resolving the nonarbitrable claims in court may make arbitration unnecessary].)

by defendant's breach]; *Nystrom v. First National Bank of Fresno* (1978) 81 Cal.App.3d 759, 766 [same].) Those facts will also be at issue in connection with the Helo parties' purported reliance on the misrepresentations by the seller defendants and any damages they incurred as a result of the fraud. (See *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 976 [to recover in fraud action, plaintiff must show reasonable reliance on misrepresentation caused damage].)

SCE contends Helo's performance under the contract is of no significance because it is not in dispute. However, absent SCE's stipulation removing that issue, the Helo parties' efforts to develop the wind farm are an essential part of their own prima face case for breach of contract and fraud. Such efforts may also be relevant to the amount of damages incurred in connection with each of these claims. SCE disputes this, asserting the costs expended to develop the wind farm, while perhaps relevant to damages for fraud, are not recoverable in a breach of contract action seeking benefit-of-the-bargain damages, which rest on the amount of profits lost as a result of the alleged breach. (See *Lewis Jorge Construction Management, Inc. v. Pomona Unified School Dist.* (2004) 34 Cal.4th 960, 967-968 ["[t]he injured party's damages cannot . . . exceed what it would have received if the contract had been fully performed on both sides"]; Civ. Code, § 3358 [same].) However, SCE's argument presupposes a binding election of remedies that need not be made at this early stage of the proceedings. (See *Smith v. Golden Eagle Ins. Co.* (1999) 69 Cal.App.4th 1371, 1375 [party need not make election of remedies at outset of litigation]; see also *Lindemann v. Hume, supra,* 204 Cal.App.4th at p. 567 ["[t]he issue to be addressed under § 1281.2, subdivision (c), however, is not whether inconsistent rulings are inevitable but whether they are possible if arbitration is ordered"].)[9]

---

[9] Highlighting allegations in the complaint that the Helo parties discovered the fraud in May 2011, SCE contends any purported damages incurred after that date in connection with the fraud causes of action would not be recoverable because no additional payments could have been made, or acts performed, in justifiable reliance on the fraudulent representations. SCE's observation, while legally accurate, narrows the scope of damages but does nothing to eliminate the theoretical potential for conflicting rulings on

There is also a possibility of conflicting rulings on the ownership of membership interests in Sand Canyon of Tehachapi, a fact central to both Saugatuck's arbitrable claim to recover the development deposit under the PPA and GLJ's nonarbitrable claim for declaratory relief and damages based upon the Helo parties' alleged default under the GLJ note. SCE acknowledges this potential for conflicting rulings, but insists it can be eliminated by staying the arbitration pending resolution of the judicial proceedings; SCE would agree to abide by any finding on this issue in the judicial proceeding. SCE's suggestion for avoiding the possibility of conflicting rulings addresses how the court should exercise its discretion once it determines section 1281.2, subdivision (c), applies—an issue we consider in the following section—not whether the statute applies in the first place. Plainly it does here.

3. *The Trial Court Abused Its Discretion in Denying Arbitration Entirely*

If the statutory prerequisites to section 1281.2, subdivision (c), are met, the court has broad discretion in selecting among the statute's delineated options. (See *Lindemann v. Hume, supra,* 204 Cal.App.4th at p. 568.) That one approach is reasonable does not necessarily mean a different one selected by the trial court is not. (*Mercury Ins. Group v. Superior Court, supra,* 19 Cal.4th at p. 351 ["[t]he reasonableness of an approach that was not selected [under § 1281.2, subd. (c)] does not entail the unreasonableness of the one that was"].) Still, the court's discretion under section 1281.2, subdivision (c), is not unlimited, but rather guided by the extent to which the possibility of inconsistent rulings may be avoided. (*Metis Development LLC v. Superior Court, supra,* 200 Cal.App.4th at pp. 692-693 ["[w]hat the trial court chooses to do in this situation is a matter of its discretion, guided largely by the extent to which the possibility of inconsistent rulings may be avoided"].)

Here, the possibility of inconsistent rulings on the factual question of Helo's performance under the contract, while existent in theory, is remote and highly

---

Helo's performance under the PPA and reliance on the misrepresentations prior to May 2011.

speculative. Both Helo's breach of contract claim and SCE's defense to that claim center on the truth of SCE's purported reason for termination, that is, the interconnection study showing the costs to SCE (the costs to connect the wind farm to SCE's transmission grid) exceeding $2.5 million. Helo's performance under the PPA has not, to date, been raised by SCE and is unlikely to be a factor at all in resolving the breach of contract claim. Thus, this case is very different from *Lindemann v. Hume, supra,* 204 Cal.App.4th at page 568 (trial court's observation of possibility of inconsistent rulings on central issue of plaintiff's liability was "eminently reasonable"), *Birl v. Heritage Care, supra,* 150 Cal.App.4th at page 1322 (trial court did not abuse its discretion in denying motion to compel arbitration where conflicting rulings on central issue of who was at fault in medical malpractice action), and *Fitzhugh v. Granada Healthcare and Rehabilitation Center, supra,* 150 Cal.App.4th at pages 475 to 476 (observing the tangible potential for conflicting rulings on question whether any violations of the Patients' Bill of Rights caused the victim's injuries or her death), where the potential for inconsistent rulings on a central issue was neither remote nor theoretical.

A more concrete possibility of a potential for inconsistent rulings involves the question whether GLJ or the Helo parties own the membership interests in Sand Canyon of Tehachapi. As we explained, this is an issue in both the Helo parties' breach of contract and Commercial Code claims against SCE and their claims against the fraud defendants. However, SCE has agreed to be bound by the ruling in the trial court on this question, thus eliminating the potential for inconsistent rulings.

It is, of course, not the province of this court to second-guess the trial court's evaluation of different options available under section 1281.2, subdivision (c). (*Lindemann v. Hume, supra,* 204 Cal.App.4th at p. 568; *Birl v. Heritage Care, supra,* 172 Cal.App.4th at p. 1322.) In many instances there will be more than one reasonable choice and the selection of one over the other will not amount to an abuse of discretion. (*Mercury Ins. Group v. Superior Court, supra,* 19 Cal.4th at p. 351; *Fitzhugh v Granada Healthcare and Rehabilitation Center, supra,* 150 Cal.App.4th at pp. 475-476.) Here, however, any possibility of conflicting rulings was either remote and entirely theoretical

16

or related to a tangential issue (to whom should SCE return the development deposit) that could have easily been eliminated by reasonably available means. Denying arbitration under these circumstances would also impose an additional and unreasonable burden on SCE, forcing it to participate in a protracted fraud litigation that, as we have explained, only marginally relates to the series of transactions at issue in the contract claims asserted against it. We need not determine whether any single factor we have recited is itself sufficient to compel reversal. Considered cumulatively, together with the strong public policy favoring arbitration, they compel the conclusion the order denying arbitration was an abuse of discretion. (See, e.g., *Metis Devleopment LLC v. Superior Court*, *supra*, 200 Cal.App.4th at p. 693 ["In this case, the record does not support the court's decision to deny arbitration entirely. . . . [T]here is no indication why the possibility of conflicting rulings as to those third parties could not also be resolved by staying the claims against them, given the court's apparent conclusion that it could be resolved by staying the claims against Polati"].)[10]

## DISPOSITION

The order denying arbitration is reversed. On remand the trial court is directed to compel arbitration of the Helo parties' claims against SCE and to exercise its discretion under section 1281.2, subdivision (c), as to how and when the arbitration shall proceed. Each party is to bear its own costs on appeal.


PERLUSS, P. J.

We concur:


WOODS, J.          SEGAL J.[*]

---

[10]    SCE's request for judicial notice filed January 24, 2013 and the Helo parties' request for judicial notice filed February 26, 2013 are denied.

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.