Filed 11/8/13  Estate of Schneider CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| Estate of ULRIKE SCHNEIDER, Deceased. | |
| JIM TRAVIS TICE, Petitioner and Respondent, v. DANIEL A. NOROSKI, Objector and Appellant. | G047377 (Super. Ct. No. 30-2009-00329902) O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Randall J. Sherman, Judge.  Affirmed.

Vogt Resnick Sherak, David A. Sherak and Jeany A. Duff for Objector and Appellant.

Catanzarite Law Corporation, Kenneth J. Catanzarite, Ronald R. Roundy and Eric V. Anderson for Petitioner and Respondent.

\*            \*            \*

Tragically, Ulrike Schneider died of cancer on July 10, 2009 at the age of 46. She died intestate, unmarried, and without children. Ulrike's mother Erika stands to inherit the estate (Prob. Code, § 6402, subd. (b))[1] and would ordinarily be entitled to appointment as administrator of the estate (§ 8461, subd. (e)). But Erika is a resident of Germany, precluding her appointment as administrator. (§ 8402, subd. (a)(4).) And prior to the recent amendment of section 8465, Erika was also precluded from nominating an administrator to serve in her stead. (*Estate of Damskog* (1991) 1 Cal.App.4th 78, 79; Stats. 2012, ch. 635, § 1 [effective January 1, 2013, court may now appoint as administrator nominee of heir who is precluded from acting as administrator by reason of foreign residency].)

Against this legal backdrop, two competing petitions for letters of administration were on file with the probate court as of mid-2012. One was submitted by appellant Daniel Noroski, Ulrike's long-term, live-in boyfriend. Noroski petitioned to have the public administrator (see § 7600 et seq.) appointed; the public administrator's office opposed its own appointment in this case. The second petition was filed by respondent Jim Travis Tice. Although Tice himself had no special status that would have entitled him to priority for appointment (§ 8461), the Tice petition was filed by the same attorneys who represented Erika in objecting to the Noroski petition. Tice sought appointment to pursue claims against Noroski and others on behalf of the estate. Noroski claimed it would be inappropriate to appoint Tice because Tice was biased against Noroski on account of Tice's relationship with Erika's law firm and his announced intention to pursue litigation against Noroski on behalf of the estate.

The court issued letters of administration to Tice and denied Noroski's petition, an appealable order. (§ 1303, subd. (a).)[2] We affirm.

---

[1] All statutory references are to the Probate Code unless cited otherwise.

[2] The court had previously awarded letters of special administration to Tice,

2

*Noroski's Initial Submissions*

In April 2010, Noroski filed a verified petition with the probate court identifying himself as the surviving spouse of Ulrike. In an attachment, Noroski represented that he and Ulrike "married on April 23, 1999 in Munich, Germany." Noroski signed the petition under penalty of perjury. The petition sought a determination of property passing to the surviving spouse without administration, a confirmation of property belonging to the surviving spouse, and immediate appointment of a probate referee. Noroski identified Erika as Ulrike's mother, but indicated her mailing address in Germany was unknown. Noroski listed real properties in La Mirada and Lake Arrowhead as subject to the petition. Noroski supplemented this petition in May 2010, with further detail regarding the Lake Arrowhead property and funds in escrow ($56,750) for the purchase of a Corona residence.

In December 2011, Noroski filed a petition for letters of administration naming the public administrator as administrator of the estate. In this petition (again verified by Noroski under penalty of perjury), Noroski represented that Ulrike had no spouse at the time of her death. This petition identified Erika and Ulrike's brother, Wolfgang, as Ulrike's survivors, with notice sent care of the Catanzarite Law Corporation (Catanzarite). This petition estimated the value of the estate as $5,000, consisting solely of personal property. A hearing date of February 2, 2012 was indicated on the petition.

---

which is not an appealable order. (§ 1303, subd. (a).) We ignore aspects of the record related to this order.

*Erika and Wolfgang Schneider Submissions*

On January 20, 2012, Erika and Wolfgang (both residents of Germany) filed a petition for letters of administration, in which they sought to nominate James Schramm (an accountant with experience in the administration of estates) as administrator of Ulrike's estate. This petition characterized the estate as consisting of litigation claims of an uncertain value, including claims both against Noroski and shares of claims brought by Noroski against third parties. Schramm stated in a declaration that he "would support the filing and prosecution of both complaints on behalf of the estate."

Alongside their petition, Erika and Wolfgang objected to Noroski's petition for letters of administration. Erika and Wolfgang claimed Noroski had no right to bring the petition, pointed out his inconsistent filings with regard to his status as Ulrike's spouse, and claimed Noroski was simply trying to thwart justified litigation against him. The objection was supported by the declaration of attorney Kenneth Catanzarite, who attached Noroski's 2010 petition and supplemental petition to demonstrate the inconsistency of its representations with the December 2011 petition. Erika and Wolfgang requested that the court take judicial notice of a 2003 quitclaim deed signed by Noroski in which Noroski described himself as an "unmarried man."

*March 1, 2012 Hearing*

At a hearing conducted on March 1, the public administrator appeared and stated it opposed its own appointment as administrator. Counsel for Noroski stated he would "still seek to have the public administrator appointed." The court stated to counsel for Erika and Wolfgang that "you're going to have to deal with [an] issue of non-residen[ts] of the United States not having standing to nominate a personal representative. [¶] However, that doesn't prevent the person from filing a petition on their own behalf assuming they are a California resident." The court continued the hearing to March 28, 2012.

4

*Additional Noroski Submissions*

On March 28, 2012, Noroski filed a supplement to his petition in response to "probate notes" from the court concerning his relationship with Ulrike. Noroski verified the following explanation under penalty of perjury: Noroski "and the decedent were not legally married and therefore, [Noroski] is not the surviving spouse of the decedent. However, [Noroski] and the decedent cohabited and held themselves to the public as husband and wife since 1998 until the decedent's death on July 10, 2009. On information and belief, [Noroski] was decedent's partner under a nonmarital oral agreement . . . , the specific terms of which are that [Noroski] and decedent were husband and wife and upon the death of one the other inherits the deceased person's estate as surviving spouse." Noroski appended a memorandum of points and authorities in support of his petition for letters of administration.

*March 28, 2012 Hearing*

At this hearing, when asked whether it was willing to serve, the public administrator again "strenuously object[ed] to being appointed in this matter. It's all about litigation, and we don't want to handle [it], nor are we equipped to." Counsel for Erika explained that Schramm withdrew his consent to appointment, but they were looking for a new proposed administrator to pursue litigation claims on behalf of the estate. As noted by counsel for Noroski, "the civil court has made it clear that any interest that the decedent may have of claims against the insurance company or Mr. Noroski must be brought by the personal representative. That's why . . . both parties are here to try to get somebody appointed." The court continued the hearing.

*Tice Submissions*

On April 6, 2012, Tice submitted a verified petition for letters of administration. The petition was supplemented on May 14, 2012. The information in

5

this petition was similar to the petition seeking the appointment of Schramm, including the identification of litigation claims adverse to Noroski as the only property of the estate.

*May 16, 2012 Hearing*

The court opened this hearing with the following inquiry: "This is a petition with Mr. Noroski nominating the public administrator to serve as personal representative. The personal representative does not consent to the appointment. They can't be compelled because it's less than $150,000 [in the estate]. So why shouldn't the court just go ahead and deny this petition today?" Counsel for Noroski responded: (1) by noting an objection to the pending Tice petition; (2) by explaining the estate could be worth more than $150,000 if the litigation proposed by Tice were successful; and (3) by asserting the public administrator is the "most qualified to act" under the circumstances of this case. The court continued the hearing on Noroski's petition until June 20. Upon Noroski's request, the court continued the following day's scheduled hearing on Tice's petition to June 20 as well. The court noted that this continuance was in part to allow Noroski time to file written objections. The court had noted earlier in the hearing that "if there's an objection, you're going to have to go through a trial . . . ."

*Noroski's Objections to Tice Petition*

On May 16, 2012, Noroski filed a written response and objections to the Tice petition. In citing an alleged conflict of interest that would preclude the appointment of Tice, Noroski claimed: "Tice is not capable of properly executing the duties of a personal representative, is improperly biased, is not qualified for appointment as personal representative, and Mr. Tice's appointment as personal representative is not in the best interest of the estate or its heirs. On information and belief, Mr. Tice is an attorney and former law partner of [Catanzarite], who co-counseled with Mr. [Kenneth] Catanzarite on numerous cases." "[B]oth [Catanzarite] and Mr. Tice are clearly biased

6

and have no regard for ethics. . . . It financially benefits both Mr. Tice and his colleague Mr. [Kenneth] Catanzarite . . . to pursue the claims against Dr. Noroski. It is impossible for Mr. Tice to be impartial here." "[D]espite the claims against . . . Noroski having no merit, being made for the sole purpose of harassing and extorting . . . Noroski, and not for the purpose of benefitting the estate . . . , Mr. Tice will pursue such claims if selected, without question. In fact, the Schneiders never filed any claim related to the estate for several years, until [Catanzarite] pursued them in Germany for its own benefit."

Noroski also pointed out that Catanzarite was representing both Tice and the Schneiders in this matter. Noroski claimed he was a beneficiary of the estate due to his alleged oral agreement with Ulrike. Noroski cited Catanzarite's adverse involvement in five pending cases against Noroski. According to Noroski, the cases included a suit filed by the purchaser of Noroski's dental practice, a class action on behalf of former dental patients, an action brought on behalf of Erika and Wolfgang against Noroski for funds associated with the dental practice, an employment case brought by a former employee against Noroski's dental practice, and a case against multiple parties (including Noroski) involving insurance claims made after the destruction by fire of a residence owned (at least in part) by Ulrike before her death.

*Declarations in Support of Tice Petition*

On May 24, 2012, Kenneth Catanzarite filed a declaration in which he stated, "Tice is not a former partner of [mine]. He was an employee only until the middle of 2008. We do not associate socially or otherwise." "Paul Velasco has agreed to associate into the case upon Mr. Tice's appointment to deal with any conflict." Paul Velasco, a certified specialist in probate law, submitted his own declaration representing that he would associate as counsel for Tice to address any conflicts of interest.

7

*Tice's Verified Response to Objections*

Tice claimed there was no conflict of interest, both because he was not biased as a result of his previous employment by Catanzarite, and because Noroski was not a beneficiary of the estate. Tice characterized Noroski's objections as efforts to divert attention from his own conduct.

*June 20, 2012 Hearing and Minute Order*

The court began this hearing by confirming that the public administrator still had no interest in serving. The court then announced its tentative ruling "to sustain the objections and deny the [Noroski] petition. And on Mr. Tice's petition to overrule the objections and approve the petition."

Counsel for Noroski stated, "Your Honor, I believe my clients have a right to an evidentiary hearing on this issue on the appointment of an administrator for this estate. I believe we should have this go to an evidentiary hearing."

Rather than directly addressing this point, the court explained the reasoning behind its tentative ruling: (1) Noroski committed a fraud on the court by inaccurately describing Ulrike's marital status in verified submissions; (2) as a matter of law, there is no bias or conflict with regard to Tice that precludes appointment; and (3) the public administrator is unwilling to serve. Counsel for Noroski argued that his client had not intentionally misstated the facts, then reiterated his request for "an evidentiary hearing on the issue of who should be appointed administrator." The court again did not address the question of an "evidentiary hearing."

At the end of the hearing, the court responded to Noroski's request for a statement of decision: "That's not an appropriate procedural component of this type of hearing, so no."

Nevertheless, the same day, the court issued a minute order explaining its ruling: "As to the petition filed by . . . Noroski nominating the Public Administrator, the

8

Public Administrator has indicated that he is unwilling to serve, and under . . . [section] 7620 the Public Administrator is not obligated to serve if the total value of the property in the estate is less than $150,000, which is the case alleged here.  In addition, the court sustains the objections of Erika Schneider and Wolfgang Schneider, which are based in part on Noroski attempting to commit a fraud on the court by filing a Spousal Property Petition alleging under oath that he was the spouse of the decedent, when in fact he was not the decedent's spouse.  Thus, the court denies the Petition for Letters of Administration filed by . . . Noroski."

"As to the petition filed by . . . Tice, Noroski has objected on the ground that Tice, an attorney, allegedly is biased and has a conflict of interest because he is affiliated with the attorneys representing Erika Schneider and Wolfgang Schneider in litigation against Noroski.  It appears that there is no conflict of interest as a matter of law, and the court concludes that Noroski's objections do not amount to a ground for disqualification under . . . [s]ection 8502, and overrules the objections.  Accordingly, the Petition for Letters of Administration filed by . . . Tice is approved as supplemented, and . . . Tice is appointed as Administrator of the Estate of Ulrike Schneider . . . ."

DISCUSSION

Noroski raises two alleged procedural errors by the court.  On the merits, Noroski contends the court erred both by appointing Tice as administrator and refusing to appoint the public administrator.  We reject each of Noroski's assertions.

*The Court Was Not Obligated to Continue the Case for an "Evidentiary Hearing"*

Noroski's first contention is that his attorney's oral request for an "evidentiary hearing" at the June 20, 2012 hearing was erroneously denied by the court. Our review of the hearing transcript suggests that Noroski's attorney was not asking to

9

put on witnesses at the June 20 hearing.  (See § 1046 [at probate court hearing, court shall "consider evidence presented"].)  Instead, it appears that Noroski's attorney was really asking the court to schedule a trial in the future on the issue of whom to appoint as administrator.  (See § 1045 ["The court may continue or postpone any hearing, from time to time, in the interest of justice"].)  There is no indication in the transcript that Noroski, Tice, or any other potential witness was even present at the hearing.  Counsel for Noroski did not state he wished to call a witness to testify; he stated "we should have this go to an evidentiary hearing."

"Except to the extent that [the Probate Code] provides applicable rules, the rules of practice applicable to civil actions . . . apply to, and constitute the rules of practice in, proceedings under this code.  All issues of fact joined in probate proceedings shall be tried in conformity with the rules of practice in civil actions."  (§ 1000.)  Even though they would constitute hearsay at trial, affidavits and declarations are admissible as evidence in civil law and motion practice.  (See Code Civ. Proc., §§ 2009, 2015.5.)  Indeed, "[e]vidence received at a law and motion hearing must be by declaration or request for judicial notice without testimony or cross-examination, unless the court orders otherwise for good cause shown."  (Cal. Rules of Court, rule 3.1306(a).)  "A party seeking permission to introduce oral evidence . . . must file, no later than three court days before the hearing, a written statement stating the nature and extent of the evidence proposed to be introduced and a reasonable time estimate for the hearing."  (Cal. Rules of Court, rule 3.1306(b).)

Clearly, Noroski's assertion of error would fall flat were it made regarding a civil law and motion hearing.  Noroski did not seek leave of the court before the hearing to offer oral evidence at the hearing.  Noroski did not even suggest his witnesses were prepared to offer testimony at the hearing.  Noroski received an "evidentiary hearing," in that the court made itself available to consider any evidence and argument submitted by the parties before issuing its ruling.  Viewed in this light, Noroski was *orally* requesting a

10

continuance of a hearing that had already begun (and had already been continued on numerous occasions), as well as an opportunity to present oral testimony at the continued hearing, a request that would not be well taken by a court conducting a law and motion hearing.

But Noroski argues the result is different under the Probate Code:  "An affidavit or verified petition shall be received as evidence *when offered in an uncontested proceeding* under this code."  (§ 1022, italics added.)  This statute has been interpreted to require live testimony whenever an objection is raised to the adjudication of an issue by affidavits, declarations, or verified petitions.  (*Estate of Bennett* (2008) 163 Cal.App.4th 1303, 1308-1309 (*Bennett*).)  According to Noroski, *Bennett* and another recent case (*Estate of Lensch* (2009) 177 Cal.App.4th 667 (*Lensch*)) require courts to conduct "evidentiary hearings" (in the sense of receiving oral testimony as at trial) regardless of the party's readiness to call witnesses or the timing of the party's objection to written evidentiary submissions (i.e., even if, like here, the request is not made in writing or even orally until the last of four hearings on the same subject, and is made only at the final hearing once the party discovers he is going to lose).  We do not think these cases go so far.

In *Bennett*, certain family members of the decedent filed a section 11604 motion to set aside and rescind a settlement agreement and assignment of their interest in the estate.  (*Bennett*, *supra*, 163 Cal.App.4th at p. 1307.)  Corporate claimants (Smith) opposed the motion.  (*Id*. at pp. 1305, 1307.)  While both sides submitted declarations supporting their positions, Smith argued in its written opposition papers that the factual issues required a "'trial or evidentiary hearing on the merits.'"  (*Id*. at p. 1307.)  At the hearing, Smith reiterated the need for an "'evidentiary hearing,'" but the court took the matter under submission without the benefit of oral testimony and ultimately ruled in the family's favor.  (*Id*. at p. 1308.)  The appellate court concluded that the probate court erred in its refusal to "conduct an evidentiary hearing."  (*Ibid*.)  *Bennett* does not support

11

Noroski's position. Unlike Noroski, Smith raised the need for an evidentiary hearing in its written opposition before the *initial hearing* on the motion began. Smith reiterated this position at the first and only hearing, apparently before the court had expressed its view of the motion. (*Ibid.*) The *Bennett* trial court wrongly ignored Smith's timely invocation of the need for a trial on the numerous disputed factual issues raised in the family's motion. (*Id.* at p. 1309.)

In *Lensch*, Gladys — the family matriarch — died, having left a will dividing her estate between her daughter Claudia and her son Jay. (*Lensch*, *supra*, 177 Cal.App.4th at p. 671.) Jay was found dead 11 hours after Gladys's death. (*Ibid.*) Jay's will disinherited his two sons, Jason and Ean. (*Ibid.*) Claiming they were entitled to Jay's share of Gladys's estate, Jason and Ean petitioned pursuant to section 230 for a determination of which family member died first. (*Id.* at pp. 671, 675.) The June 25, 2008 petition stated that the time of death on Jay's death certificate was actually the time of discovery of Jay's body, and that out-of-court statements by the coroner suggested Jay had died between 24 and 48 hours before the discovery of his body. (*Id.* at pp. 671-672.) Jay's executor filed a written opposition to the petition on July 25, 2008. (*Id.* at p. 672.) The written opposition argued that death certificates proved the times of death of the two family members and the petition "was based on 'inadmissible opinions, speculation, and hearsay.'" (*Ibid.*) The record did not "contain a copy of any proof of service" of the opposition. (*Id.* at p. 677, fn. 2.) It is therefore unclear whether Jason and Ean even knew their petition was opposed until the hearing occurred five days later.

At the "brief hearing" conducted on July 30, 2008, the court issued a tentative ruling suggesting that Gladys's will did not require the survival of the beneficiaries, an argument not addressed by either of the parties in their written submissions. (*Lensch*, *supra*, 177 Cal.App.4th at p. 672.) The court ultimately confirmed its tentative ruling and ruled alternatively that the only evidence before it (the death certificates) showed that Jay survived Gladys. (*Id.* at pp. 672-673.) The court

12

deemed the coroner's alleged statement to be hearsay. (*Id*. at p. 672.) On three occasions at the hearing, counsel for petitioners requested an "evidentiary hearing," but the court apparently denied those requests. (*Id*. at p. 672.)

Interpreting the meaning of Gladys's will de novo, the appellate court first determined it was error to conclude there was no survival requirement in the will. (*Lensch*, *supra*, 177 Cal.App.4th at pp. 673-675.) Thus, the dispositive issue in the case was the question of who survived whom. The appellate court held that the "probate court should have held an evidentiary hearing on this issue and erred in denying appellants' request for one." (*Id*. at p. 675.) On appeal, Jay's executor conceded Jason and Ean were entitled, in a general sense, to present live testimony. (*Id*. at p. 677.) The court rejected the executor's assertion that Jason and Ean had waived or were estopped from asserting their right to an "evidentiary hearing." (*Id*. at pp. 677-678.) The court held that California Rules of Court, rule 3.1306(b), does not apply to probate proceedings. (*Id*. at p. 677.) Moreover, the court disagreed with the suggestion that Jason and Ean "followed a deliberate trial strategy in which they chose to rely on the allegations of their petition." (*Id*. at p. 678.) The court noted they "requested an evidentiary hearing shortly after they learned that their petition was opposed." (*Ibid*.)

*Lensch* does not hold that, under any circumstances, a participant in a probate proceeding can wait to request a separate "evidentiary hearing" until after a previously scheduled contested hearing begins. In the instant case, Noroski did not orally request an evidentiary hearing the first three times the court held a hearing regarding the appointment of an administrator. Noroski did not object in writing at any time to the court's reliance on written submissions. Noroski specifically requested that the court continue a previously scheduled hearing on Tice's petition so it would coincide with the final June 20 hearing on Noroski's petition.[3] The court granted this continuance in part to

---

[3] At oral argument, Noroski's counsel repeatedly referred to the June 20, 2012 hearing as the "initial hearing" and claimed that the Probate Code required the court

13

allow Noroski additional time to file written objections. (Cal. Rules of Court, rule 7.801.) It does not appear Noroski was ready to present live testimony at the June 20 hearing — even his own testimony (which would have been most relevant to the factual question of whether his initial petition was fraudulent). Instead, Noroski sought to delay the proceedings further by asserting an alleged right to an "evidentiary hearing" that would necessarily include a continuance.

We conclude Noroski forfeited the right to a trial on the competing petitions under the unique circumstances of this case. (See *Evangelho v. Presoto* (1998) 67 Cal.App.4th 615, 620 ["'where the parties do not object to the use of affidavits in evidence, and where both parties adopt that means of supporting their positions, the parties cannot question the propriety of the procedure on appeal'"]; *Estate of Fraysher* (1956) 47 Cal.2d 131, 135.) Prior to his discovery that he was going to lose the fight at the June 20 hearing, it appears Noroski followed a "deliberate . . . strategy" of relying on written evidentiary submissions. (*Lensch*, *supra*, 177 Cal.App.4th at p. 678.) Noroski's belated request for an "evidentiary hearing" was too little, too late.

*The Court Provided an Adequate Statement of Decision*

Noroski also claims the court committed reversible error when it denied his counsel's oral request at the hearing for a statement of decision. A statement of decision must "explain[ ] the factual and legal basis for [the court's] decision as to each of the

---

to treat an "initial hearing" as a trial setting conference. The problem with this argument is that the June 20 hearing was not the "initial hearing." It was the fourth hearing regarding the contested Noroski petition to appoint the public administrator and the second scheduled hearing regarding the contested Tice petition (the initial Tice petition hearing was continued at the request of Noroski). Relatedly, Noroski's counsel argued that a third party would have been entitled to a continuance and evidentiary hearing had such a third party appeared at the June 20, 2012 hearing to object to either petition. Even assuming this is true, no third party appeared to make an objection and this consideration is therefore irrelevant.

14

principal controverted issues at trial . . . ." (Code Civ. Proc., § 632; see also *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 67-68.) Statements of decision are sometimes required even when an actual "trial" has not occurred. (*Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 688-689.)

Although not denominated as such, the minute order satisfied any obligation the court may have had to provide Noroski with a statement of decision. The basis for the court's decision was communicated in the minute order. The court's denial of Noroski's petition was based on its factual findings that Noroski had committed a fraud upon the court and that the public administrator was not willing to serve. The court's grant of Tice's petition was based on the legal conclusion that there was no cognizable conflict precluding the appointment of Tice, even taking Noroski's factual allegations about Catanzarite's involvement in pending litigation to be true. Thus, assuming the court was wrong to orally reject Noroski's request for a statement of decision, such error would necessarily be harmless.

*The Court was Entitled to Reject Noroski's Petition*

We review the court's appointment of Tice (and refusal to appoint the public administrator) for an abuse of discretion. (See *Estate of Bertie* (1955) 132 Cal.App.2d 522, 524-525.)

"A person has no power to administer the estate until the person is appointed personal representative and the appointment becomes effective" through the issuance of letters. (§ 8400, subd. (a).) If a person dies intestate, the court shall appoint an "administrator" (or administrators) of the estate. (§ 8460; cf. § 8420 [appointment of "executor" of will].) Of relevance here, one power of personal representatives is to "[c]ommence and maintain actions and proceedings for the benefit of the estate." (§ 9820, subd. (a); see *Smith v. Cimmet* (2011) 199 Cal.App.4th 1381, 1390-1391

15

[explaining that estate itself is not a legal entity and that personal representative must appear in court on behalf of estate].)

Section 8461 sets forth an "order of priority" for appointment as administrator of an estate: "(a) Surviving spouse or [registered] domestic partner . . . . [¶] (b) Children. [¶] (c) Grandchildren. [¶] (d) Other issue. [¶] (e) Parents. [¶] (f) Brothers and sisters. [¶] . . . [¶] (p) Public administrator. [¶] (q) Creditors. [¶] (r) Any other person." Ulrike and Noroski were not married or registered domestic partners. Ulrike had no children, grandchildren, or other issue. Were section 8461 the only applicable statute, Erika would be "entitled to appointment as administrator" as the parent of Ulrike. However, certain individuals ordinarily entitled to priority are disqualified from appointment as administrator, including nonresidents of the United States. (§ 8402, subd. (a)(4); *Estate of Heath* (2008) 166 Cal.App.4th 396, 400-401; *Estate of Damskog*, *supra*, 1 Cal.App.4th at p. 80.)

Perhaps recognizing her ineligibility to serve as administrator, Erika initially attempted to nominate Schramm. As of the June 2012 hearing, section 8465 provided in relevant part: "(a) The court may appoint as administrator a person nominated *by a person otherwise entitled to appointment* . . . . The nomination shall be made in writing and filed with the court. [¶] (b) If a person making a nomination for appointment of an administrator is the . . . parent . . . of the decedent, the nominee has priority next after those in the class of the person making the nomination." (Stats. 2001, ch. 893, § 55, italics added.) Had she been a United States resident, Erika's nomination would have had priority vis-à-vis any other petitioner for the appointment. But under the applicable version of section 8465, Erika was not a "person otherwise entitled to appointment" and was therefore ineligible to nominate an administrator. (*Estate of Damskog*, *supra*, 1 Cal.App.4th at p. 78-81.)[4]

_____

[4] A new version of section 8465 took effect on January 1, 2013 (Stats. 2012, ch. 635, § 1). "(a) The court may appoint as administrator a person nominated by any of

16

Given the ineligibility of Erika (and, for the same reasons, Wolfgang) to act as administrator or nominate someone else as administrator, the public administrator had priority to act as administrator in this case had it sought to do so. (§ 8461, subd. (p); see *Estate of Lewis* (2010) 184 Cal.App.4th 507, 514 ["in the absence of a finding that" a person of higher priority "was not competent to act as personal representative, the court lacked statutory authority to appoint the public administrator"].) In seeking his own appointment, Tice is merely "[a]ny other person" (§ 8461, subd. (r)), the lowest priority possible. But the public administrator repeatedly declined to act as administrator. Noroski contends on appeal that the court erred by refusing to compel the public administrator to serve in this case over its objection and pursuant to Noroski's nomination.[5]

_____

the following persons: (1) A person otherwise entitled to appointment. [¶] (2) A person who would otherwise be entitled for appointment but who is ineligible for appointment . . . because he or she is not a resident of the United States." (§ 8465, subd. (a).) Thus, the Legislature apparently agreed, to some extent, with criticism of the prior rule. (See *Estate of Damskog*, *supra*, 1 Cal.App.4th at p. 82.) But the new version of section 8465 also added restrictions on the nomination of an administrator by a foreign resident and added a discretionary component to the court's ruling in cases in which the nominator is a foreign resident: "the court shall not appoint a nominee who is not a California resident to act as administrator. For California residents . . . the court shall consider whether the nominee is capable of faithfully executing the duties of the office. The court may in its discretion deny the appointment and appoint another person. In determining whether to appoint the nominee, the factors the court may consider include, but are not limited to, the following: [¶] (1) Whether the nominee has a conflict of interest with the heirs or any other interested party. [¶] (2) Whether the nominee had a business or personal relationship with the decedent or decedent's family before the decedent's death. [¶] (3) Whether the nominee is engaged in or acting on behalf of an individual, a business, or other entity that solicits heirs to obtain the person's nomination for appointment as administrator. [¶] (4) Whether the nominee has been appointed as a personal representative in any other estate." (§ 8465, subd. (d).) Moreover, the current version of section 8465 is only scheduled to remain in effect until January 1, 2016, at which time section 8465 will revert to its prior form absent legislative action. (§ 8465, subd. (h); Stats. 2012, ch. 635, § 2.)

[5] Noroski, like Tice, is in the category of "[a]ny other person" (§ 8461, subd.

17

Obviously, section 8461 does not contemplate that the public administrator will serve as personal representative in every case in which there are no potential representatives with higher priority. Section 8461 also lists categories of potential representatives with lower priority than the public administrator (including "[c]reditors" and "[a]ny other person"), a pointless legislative drafting exercise if the public administrator were meant to act as a catchall for every estate without a higher-priority representative.

Section 7620 sets forth the circumstances in which the public administrator must seek and/or accept appointment. "The public administrator of the county in which the estate of a decedent may be administered shall promptly: [¶] (a) Petition for appointment as personal representative of the estate if no person having higher priority has petitioned for appointment and the total value of the property in the decedent's estate exceeds one hundred fifty thousand dollars ($150,000). [¶] (b) Petition for appointment as personal representative of any other estate the public administrator determines is proper. [¶] (c) Accept appointment as personal representative of an estate when so ordered by the court, whether or not on petition of the public administrator, after notice to the public administrator as provided in Section 7621." (§ 7620; see also § 7621, subd. (b) ["Appointment of the public administrator may be made on the court's own motion, after notice to the public administrator"].)

Noroski did not claim, let alone establish with evidence, that $150,000 was the actual value of the estate (indeed, to do so would be to argue against his position on the merits of litigation adverse to him). (§ 7620, subd. (a).) And the public administrator, in its discretion, did not determine a petition was otherwise proper. (§ 7620, subd. (b).) Thus, Noroski is left to argue (without any supporting case authority) that the court was required to appoint the public administrator pursuant to sections 7620,

(r)) and therefore his nomination was not entitled to preference over the petition of Tice.

18

subdivision (c), and 7621, subdivision (b), over the public administrator's objection. We disagree. The court did not abuse its discretion by declining to appoint the public administrator.

*The Court Had Discretion to Appoint Tice as Administrator*

As to Tice, Noroski claims a conflict of interest eliminates him from consideration as administrator. Tice, who worked as an attorney for Catanzarite in the past, was represented by Catanzarite in his petition for letters of administration. As part of the petition, Tice (and Schramm before him) vowed to pursue litigation on behalf of the estate against Noroski and others. At the same time, Catanzarite represented Erika and Wolfgang in this probate action (in the petition to nominate Schramm as well as the objections to Noroski's petition) and in other litigation against Noroski, including one case Noroski claims is directly adverse to the estate because it was brought by dental patients against the dental practice run by Noroski and Ulrike. Noroski argues that the taint from the Catanzarite firm[6] plus Tice's apparent intention to pursue Noroski in litigation disqualify Tice from serving as administrator.

Noroski cites the following statutory authority in support of his position. "[A] person is not competent to act as personal representative in any of the following circumstances: [¶] . . . [¶] (3) There are grounds for removal of the person from office under Section 8502." (§ 8402, subd. (a).) Section 8502 provides: "A personal representative may be removed from office for any of the following causes: [¶] (a) The personal representative has wasted, embezzled, mismanaged, or committed a fraud on the estate, or is about to do so. [¶] (b) The personal representative is incapable of properly

---

[6] Although Noroski attempts to merge the issues in his brief, it must be recalled that we are *not* reviewing a motion to disqualify Catanzarite as counsel for Tice. We express no view in this opinion as to whether Catanzarite has represented clients with conflicting interests.

19

executing the duties of the office or is otherwise not qualified for appointment as personal representative. [¶] (c) The personal representative has wrongfully neglected the estate, or has long neglected to perform any act as personal representative. [¶] (d) Removal is otherwise necessary for protection of the estate or interested persons. [¶] (e) Any other cause provided by statute." Noroski does not provide specific arguments as to how Tice has violated any of these proscriptions.

Noroski also quotes snippets from several cases in his briefs to support his argument. (See *Estate of Hammer* (1993) 19 Cal.App.4th 1621, 1637 ["An executor is an officer of the court and occupies a fiduciary relation toward all parties having an interest in the estate"]; *Estate of Effron* (1981) 117 Cal.App.3d 915, 929 ["Generally, the executor's attorney may not represent a beneficiary of an estate in a controversy with other beneficiaries"]; *Morales v. Field, DeGoff, Huppert & MacGowan* (1979) 99 Cal.App.3d 307, 318 (*Morales*) ["Whether the attorney for an administrator of the estate may act for one of the heirs as against the other heirs in an adversary proceeding relating to the property of the estate depends on the circumstances of the particular case, and whether there is any conflict between the interests of the estate and those of the heir in respect to the matter involved"]; *Estate of Cole* (1966) 240 Cal.App.2d 324, 331 [court may "remove a personal representative who has an interest in the assets of the estate, either directly as a claimant or as a representative of a claimant, and *who performs acts with relation thereto which are inimical to the rights and interest of the heirs and creditors*"].)

But Noroski does not actually attempt to apply the holdings of these cases to the facts in this case. Any attempt to do so would illustrate their lack of applicability. In *Estate of Hammer*, the appellate court held an executor of a will should have been removed because he was the ex-husband of the sole beneficiary of the will, he failed to perform his statutory duties, he breached his fiduciary duty by advancing his "own self-interest at the expense of the estate and the estate's beneficiary," and he continued "to

20

assert a claim to the 'chief asset of the estate'" (the bequest to his ex-wife) by way of an alleged oral agreement. (*Estate of Hammer*, *supra*, 19 Cal.App.4th at pp. 1626, 1635-1643.) There is no claim here that Tice is actually claiming an interest in the assets of the estate or has failed to perform specified duties as personal representative. (See also *Estate of Guzzetta* (1950) 97 Cal.App.2d 169, 171-173 [court rightly removed administrator of will who would have been sole heir because she sought to attack will at expense of other beneficiaries].)

In *Estate of Effron*, the beneficiaries of a will unsuccessfully sought to remove a bank executor because it refused to fire its attorneys upon the beneficiaries' request. (*Estate of Effron*, *supra*, 117 Cal.App.3d at pp. 928-930.) The beneficiaries took umbrage at the statutory fees charged by the attorneys, an allegedly unnecessary delay in the case, and allegedly rude behavior toward beneficiaries. (*Id*. at pp. 920, 928-930.) In affirming the trial court's denial of beneficiaries' application, the appellate court observed that beneficiaries had not identified "any act of waste, embezzlement, mismanagement, fraud, or wrongful neglect. Certainly, however, hostile acts and adverse interest alone may suffice as grounds for removal for the protection of the estate. [Citations.] However, the executor's right to administer the estate is generally strong enough to permit him to serve even though his interests may conflict with other persons' interest in the estate. 'The test is probably whether the conflict of interest is with the estate itself rather than with other persons who may be interested in the estate.' [Citation.] The probate court, in examining the facts of a case, must decide whether the circumstances warrant the removal of an executor, and, except for clear abuse, the court's ruling will not be interfered with on appeal." (*Id*. at p. 930.) All this case illustrates is the deference that should be shown to the trial court's decisions pertaining to personal representatives who have not taken adverse action against the interests of the estate as a whole.

21

*Morales* is completely inapplicable to the procedural posture of this case, in that it affirmed the dismissal of a complaint for damages filed by a beneficiary of a trust against a law firm that represented the trustee and executor of a related will. (*Morales*, *supra*, 99 Cal.App.3d at pp. 311-312, 318-319.)

Finally, in *Estate of Cole*, the trial court abused its discretion by removing a bank as executor of a will. (*Estate of Cole*, *supra*, 240 Cal.App.2d at pp. 325, 332.) This case involved multiple beneficiaries of the respective wills of a married couple, who both died in the same year (the wife after the husband). (*Id.* at pp. 326-327.) A dispute arose as to whether wife had "waived her community rights and elected to take the benefits of her husband's will." (*Id.* at p. 327.) The consequences of this determination mattered because wife's will did not include some of the beneficiaries named by husband. (*Ibid.*) Those named in wife's will requested that the bank (which was acting as executor for both estates) be removed as executor of wife's estate because of "an interest adverse to its position as executor" of wife's will (i.e., its interest as executor of husband's will, which created duties toward the nonoverlapping beneficiaries). (*Id.* at p. 328.) The trial court abused its discretion by removing the bank as executor. (*Id.* at pp. 328, 332.) The bank carried out its duties by creating an inventory of all assets and raising the competing claims of the different beneficiaries with the probate court. (*Id.* at pp. 329-330.) "[A]n adversity of interest does not, in itself, disqualify a person named in a will from serving as executor as there is no statute authorizing disqualification on that ground." (*Id.* at p. 330.) The court resolved the disputes and ambiguities. (*Id.* at p. 331.) It was not "shown that the bank has committed any acts in any way inimical to the rights and interests of any beneficiaries or claimants under [wife's] will nor any reason to question the propriety of the bank's future conduct." (*Id.* at pp. 331-332.) Thus, a personal representative is not required to be free from all potential conflict, only to deal fairly with the estate.

Having reviewed the record in light of statutory and case authorities, we conclude the court did not abuse its discretion in appointing Tice. (See *Baker Manock &*

22

*Jensen v. Superior Court* (2009) 175 Cal.App.4th 1414, 1423 ["the underlying issue for conflict of interest purposes is whether the executor has sought to advance his or her self-interest 'at the expense of the estate,'" "not whether a person . . . in good faith contests a claim against the estate made by another person, whether a beneficiary or a stranger to the estate"].) The parties are in agreement that Ulrike's estate currently consists of nothing of substance except litigation claims of an unknown value (largely against Noroski). In such a scenario, it defies logic to suggest that Tice cannot serve because he has expressed an interest in pursuing litigation against Noroski. If an administrator were not willing to pursue the litigation against Noroski, the assumption of duties as administrator of Ulrike's estate would be pointless and harm the estate to the extent the litigation claims have value. Nowhere does Noroski explain why an administrator must wait until after their appointment to determine whether seeking appointment as administrator would be worthwhile.[7]

Noroski suggests this is a case in which the administrator is unfairly favoring one beneficiary of the estate over another. Noroski stated in his trial court submissions that he was entitled to "inherit" any and all of Ulrike's property because of

---

[7] The absurdity of Noroski's argument is illustrated by a hypothetical scenario. Imagine Erika, the heir apparent to an intestate estate, actually lived in California and sought appointment as administrator herself (or nominated someone of her choice to serve). Further imagine it was a business partner rather than a cohabitant who allegedly fleeced the estate of all of its assets. Would the business partner's claim that he was entitled to the property preclude the appointment of Erika or her nominee as administrator, simply because Erika or her nominee was already on record as disagreeing with the business partner's position? This hypothetical scenario, while starker than the instant case, is not fundamentally distinguishable. Tice has determined that it is worthwhile to file litigation on behalf of the estate to recover assets currently in the possession of Noroski. Noroski insists that it will somehow harm the (currently) worthless estate to allow Tice to file "frivolous" litigation against Noroski. We agree with the probate court that Noroski's self-serving view of the estate's best interest does not create a "conflict" that would preclude the court from appointing Tice.

an alleged oral agreement he entered into with Ulrike before her death. (See *Marvin v. Marvin* (1976) 18 Cal.3d 660, 665 (*Marvin*) [courts may enforce contracts between or apply equitable remedies to provide support to unmarried cohabitants].) Noroski claims an administrator should not blithely dismiss the effect of this *Marvin* agreement. But the alleged existence of an oral *Marvin* agreement would make Noroski a claimant against the estate, not an heir to the estate. (*Byrne v. Laura* (1997) 52 Cal.App.4th 1054, 1064 ["A *Marvin* agreement is enforceable against an estate when one of the parties to the agreement dies"].)[8] This dispute will ultimately be resolved by a court rather than Tice, but Tice was not required to remain agnostic as between the statutory heir and an individual who claims the existence of an oral *Marvin* agreement (after having earlier falsely claimed under penalty of perjury that he was the decedent's spouse).

---

[8] An "heir" is a "beneficiary" who inherits under the Probate Code, not someone who has a contractual right to sue the estate. (§ 24, subd. (a) ["'Beneficiary'" in an "intestate estate of a decedent, means an heir"]; § 44 ["'Heir' means any person . . . who is entitled to take property of the decedent by intestate succession under this code"]; § 48, subd. (a)(1) ["'interested person' includes . . . any other person having a property right in or claim against . . . the estate of a decedent"].)

DISPOSITION

The order is affirmed.  Tice shall recover costs incurred on appeal.


IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.