Filed 8/26/22  Krizan Associates v. Pereira CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KRIZAN ASSOCIATES, INC.,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>JOSEPH PEREIRA,<br><br>   Defendant and Appellant. | D079496<br><br>(Super. Ct. No.<br>37-2019-00017335-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Jerome R. Moe for Plaintiff and Respondent.

Navigato & Battin, Michael W. Battin and Sandip S. Randhawa for Defendant and Appellant.

Appellant Joseph Pereira contracted with respondent Krizan Associates, Inc. (Krizan), for it to provide landscape services at his home. Krizan sued Pereira for breach of contract.  Following a bench trial, the court found for Krizan, and ordered Pereira to pay damages.  Pereira contends the trial court prejudicially erred, as it failed to issue a tentative decision or give the parties an opportunity to request a statement of decision before issuing

its final statement of decision, violating Code of Civil Procedure[1] section 632 and California Rules of Court, rule 3.1590.  He contends that absent that error, the court would have found for him by recalculating the damage award, and by recognizing that Krizan failed to issue a change order for "out of scope" work it performed in breach of the parties' contract.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Pereira and Krizan entered into an agreement about landscape architectural design and related services.[2]  During a bench trial on their ensuing breach of contract dispute, Pereira argued that Krizan breached the agreement in several ways:  "The agreement required that Krizan provide all of the services in 'task one' and 'task two' within 12 weeks (or around the end of October, 2018).  Krizan breached the agreement by failing to provide the services at all but, even as to the incomplete services, they were not provided until late February of the next year.  [¶]  Krizan agreed that the fees on <u>all</u> of the tasks were 'not to exceed $9,500.00.'  Yet in breach of the agreement, Krizan charged $14,757.50 in fees—without even attempting to start [']task three.[']  [¶]  Krizan agreed to provide an invoice monthly, if reasonably possible, by the first of the month.  Krizan breached the agreement by failing to provide an invoice for over [six] months.  This breach is particularly material because, had Krizan complied and invoiced monthly, the overcharging issue could have been dealt with before the relationship had broken down.  Krizan then breached the agreement by demanding payment

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

[2]    The parties' agreement listed three tasks that Krizan would complete: task one was "conceptual landscape master plan"; task two was "landscape design development and cost calculations"; and task three was "construction administration/design build process."  (Capitalization omitted.)

to which it was not entitled and by withholding performance unless Pereira paid the king's ransom." (Some capitalization omitted.)

Following trial, the court requested the parties submit closing briefs in lieu of oral argument. Pereira argued in his closing brief that Krizan had breached the agreement in certain ways: "In multiple places, the [a]greement required Krizan to submit monthly invoices (with a corollary requirement that Pereira pay those invoices within 30 days). . . . Yet, it is undisputed that Krizan failed to provide monthly invoices. Had Krizan provided monthly invoices, the issue of what was 'in scope' would have surfaced *in September* when the amounts were small, not February, and this whole dispute would likely have been resolved without litigation." Pereira further argued: "Krizan claims that there was substantial work done in excess of the scope reflected in the agreement—and, hence, in excess of the 'not to exceed amount'—and that it should get paid for that extra work. Yet, as the evidence showed, the scope as reflected in the agreement (the wording of which was prepared by Krizan) easily encompassed all of the work Krizan claims it did." (Some capitalization omitted.)

In its closing brief, Krizan explained the basis of the "additional service" fees it charged Pereira: "Mr. Krizan, principal of plaintiff, testified that the additional service fees resulted from: 1) [Krizan's] need to create 'base sheets' since [Pereira] failed to provide current layout maps of the property as required in the first of the assumptions set forth in the agreement; 2) [Krizan's] interaction with the structural engineer and incorporation of his calculations into [Krizan's] plans; and 3) [Krizan's] interaction with the city, in obtaining permits. The three categories of additional services were clearly designated as additional services in the agreement, and the additional service fees totaled $5,437.50 (before the 20

3

[percent] discount of $2,951.50, which Mr. Krizan testified was entirely applicable to the additional service fees, thereby reducing the demand for additional service fees to $2,486)." (Some capitalization omitted.)

Krizan further argued that Pereira could have timely challenged the additional fees based on Pereira's expertise: "Mr. Pereira testified to his having been a general contractor of at least 14 years' experience at the time of the agreement, including having owned his own construction company since 2008, preceded by several years' working with his father, also a general contractor. He further testified as to having seen a multitude of construction contracts prior to reviewing [Krizan's]. It is fair to assume that, as such, Pereira knew what a change order was; was aware that none were required by the agreement; he was able to read and understand what was and was not required by the agreement; and was capable of stating any objections, or requested additions, that he thought were appropriate in response to the agreement proposed by [Krizan]." (Some capitalization omitted.)

The court in a February 22, 2021, "Statement of Decision" explained the parties' claims and the state of the record: "The overview and allegations is that [Pereira] did not pay [Krizan] in a timely manner for services and terminated/breached the contract due to poor performance by [Krizan] and failing to meet deadlines and specifications required. Both sides claim the other materially breached the contract through various acts described in the admitted evidence. The court notes the evidence was confusing and somewhat jumbled on both sides with very little clear direction for the court to follow. The court relied upon the most credible and verifiable evidence introduced to determine whether a breach of contract occurred by one or more party and whether damages, if any, were appropriate." (Some capitalization omitted.)

4

The court set forth the basis for its conclusion Pereira breached the contract: "It is clear . . . that both parties failed to adhere to the strict interpretation of the contract. There were informal modifications made to the contract that were not properly documented as amendments to the contract. The court does recognize that building plans change and slight modifications are foreseeable as well as laxed adherence to the strict terms of the contract like failing to provide monthly statements/billing by [Krizan]. . . . [¶] . . . [¶] The court agrees with the overall position of [Krizan] that [Pereira] materially breached the terms of the contract by terminating [Krizan] in a very harsh manner and failed to provide adequate compensation per the contract terms for services rendered by [Krizan]. The court notes that the allegation of plan misappropriations and failing to bill monthly were insignificant pieces of evidence in this [court's] mind." (Some capitalization omitted.)

The court cited with approval a statement from Krizan's closing brief: "So, while Mr. Krizan testified as to his willingness and intention to conclude his work, and even as to the negligible price for which it would be done, he also testified correctly, that [Pereira's] intervening breach of the terms of the [a]greement excused [Krizan] from further performance." The court awarded Krizan its damages sought in the amount of $16,466.30 plus attorney fees and costs. It directed Krizan's counsel to prepare a final order.

On March 8, 2021, Pereira objected to the statement of decision, which he claimed did not explain the factual and legal basis for the court's decision as to the following controverted issues: (1) "whether the tasks which [Krizan] claims were 'additional services' were encompassed within the scope of services in the subject agreement"; (2) "whether [Krizan] breached the subject agreement by failing to obtain a signed change order for any 'additional

5

services' "; and (3) "whether [Krizan] can recover as damages city permit fees which [it] did not pay." (Some capitalization omitted.)

On April 15, 2021, the court, without addressing Pereira's objections, incorporated by reference its statement of decision in the judgment it entered in Krizan's favor.

## DISCUSSION

Pereira argues the court's failure to announce a tentative decision prejudicially prevented him from identifying the principal controverted issues he wanted the court to address. Moreover, Pereira argues that "[b]ecause there was no *proposed* statement of decision, [he] was also prevented from objecting to, and giving the [t]rial [c]ourt an opportunity to modify, its statement of decision." He claims that if the court had followed the relevant statute and rule of court, "there is a good chance that the [j]udgment would have been in [his] favor or, at the very least, more favorable to [him]."

### I. *Applicable Law*

California Rules of Court, rule 3.1590(a) provides: "On the trial of a question of fact, the court must announce its tentative decision by an oral statement, entered in the minutes, or by a written statement filed with the clerk. Unless the announcement is made in open court in the presence of all parties that appeared at the trial, the clerk must immediately serve on all parties that appeared at the trial a copy of the minute entry or written tentative decision." "Within 10 days after announcement or service of the tentative decision, whichever is later, any party that appeared at trial may request a statement of decision to address the principal controverted issues." (Cal. Rules of Court, rule 3.1590(d).)

Section 632 directs the trial court, upon the trial of a question of fact, to "issue a statement of decision explaining the factual and legal basis for its

6

decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial." This requirement " 'is for the benefit of the court and the parties.' " (*Whittington v. McKinney* (1991) 234 Cal.App.3d 123, 126.) " 'To the court it gives an opportunity to place upon [the] record, in definite written form, its view of the facts and the law of the case, and to make the case easily reviewable on appeal by exhibiting the exact grounds upon which judgment rests. To the parties, it furnishes the means, in many instances, of having their cause reviewed without great expense.' " (*Id.* at pp. 126-127, italics omitted.)

"Where [a] statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision." (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 358.) But "[w]hen a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court . . . , it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue." (§ 634.)

However, " ' "[a] trial court rendering a statement of decision under [ ] section 632 . . . is not required to make findings with regard to detailed evidentiary facts or to make minute findings as to individual items of evidence. . . . A failure to find on an immaterial issue is not error." ' " (*Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 163.) Instead, "a court need only fairly disclose its determinations as to the ultimate facts and material issues in the case," and " 'the term "ultimate fact" generally refers to a core fact, such as an essential element of a claim.' " (*Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 689.)

7

## II. *Analysis*

We agree with Pereira that the court did not announce a tentative decision before it issued its statement of decision. Together, section 632 and California Rule of Court, rule 3.1590 comprise a set of rules regarding how a trial court is to announce its decision on questions of fact and the process for objecting to, clarifying, modifying, and finalizing that decision. That process must be followed to ensure the litigants' rights, and anything less (e.g., a "somewhat nonstatutory" process) is not satisfactory. (See *Whittington v. McKinney* (1991) 234 Cal.App.3d 123, 126 ["We frown on . . . the use of any short-hand method designed to avoid the mandate of section 632 . . ."].)

Nevertheless, we conduct a harmless error review of this issue. (Accord, *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108 ["[A] trial court's error in failing to issue a requested statement of decision is not reversible per se, but is subject to harmless error review. Nothing in the language of section 632 as it now stands establishes a rule of automatic reversal, and nothing in the statute's legislative history suggests the Legislature intended the current statute to have that effect"].)

As Pereira acknowledges, in his timely objections to the statement of decision, he claimed the court had not addressed certain specific controverted issues. (California Rules of Court, rule 3.1590(g) ["Any party may, within 15 days after the proposed statement of decision and judgment have been served, serve and file objections to the proposed statement of decision and judgment"].) He points out the court did not rule on his objections.

We conclude that if the court had considered Pereira's objections, evidence and argument meritorious, it had the opportunity to change its statement of decision. But by declining to do so, the court implicitly overruled Pereira's objections. "A statement of decision issued by the court

8

cannot automatically constitute a final decision for purposes of entry of judgment . . . because [ ] section 632 and California Rules of Court, rule [3.1590(b)] contemplate that a court may amend its statement of decision after it receives objections from affected parties.  Because judgment had not yet been entered, the trial court had inherent power to amend its statement of decision.  . . .  Even after a court has issued a written decision, the court retains the power to change its findings of fact or conclusions of law until judgment has been entered." (*Bay World Trading*, *Ltd. v. Nebraska Beef, Inc.* (2002) 101 Cal.App.4th 135, 141.)  As noted, the court presided over the trial, and had the benefit of Pereira's trial brief, and the parties' closing briefs, which raised some of the same issues Pereira raises in this appeal.  The court explicitly relied on Krizan's arguments and evidence.  In so doing, it rejected Pereira's contrary claims.

We further conclude the court's statement of decision satisfied section 632's requirements by resolving the principal controverted issues raised at trial.  Further, the court stated the ultimate facts and the legal basis for its conclusion that Pereira had breached the contract.  Specifically, as set forth more fully above, the court considered the actions of both parties, accepted that both of them were lax in their adherence to the agreement's strict terms, but it concluded that Pereira "materially breached the terms of the contract by terminating [Krizan]," and he "failed to provide adequate compensation per the contract terms for services rendered by [Krizan]."  The court considered "insignificant" the fact that Krizan failed to bill Pereira monthly.

Pereira contends:  "There were at least two controverted issues which, had the trial court ruled on, would likely have been found in [his] favor." (Some capitalization omitted.)  First, Pereira surmises the court based its damages award on the amount reflected in Krizan's invoice, and argues that

9

the invoice total "includes 'city permit fees and processing' in the amount of $5,418.41. . . . However, it is undisputed that [Krizan] never paid a substantial portion of the city permit fees." (Italics and some capitalization omitted.)

We agree with Krizan, who responds to this argument by pointing to trial testimony from its representative stating Krizan had received the city permit invoices, was obligated to, and intended to pay them. " 'In reviewing a judgment based upon a statement of decision following a bench trial . . . [a reviewing court will] apply a substantial evidence standard of review to the trial court's findings of fact.' " (*Keading v. Keading* (2021) 60 Cal.App.5th 1115, 1125.) " 'Under this deferential standard of review, findings of fact are liberally construed to support the judgment and [the reviewing court] must consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings.' " (*Ibid.*, citing *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) The court had sufficient basis to award Krizan damages, including the city permit fees Krizan incurred.

Pereira next argues Krizan breached the agreement as shown by the fact the majority of Krizan's fees was for "out of scope" work, despite Krizan never providing him with change orders or an amended agreement. He adds that because Krizan failed to send him monthly invoices as required by their agreement, it violated the Rules of Professional Conduct for landscape architects. He claims the court did not mention this issue in its statement of decision.

The record does not support this claim. It shows the trial court in its statement of decision specifically addressed this issue when it stated in the context of the entire evidence that "building plans change and slight

10

modifications are foreseeable as well as laxed adherence to the strict terms of the contract like failing to provide monthly statements/billing." It regarded Krizan's failure to bill monthly as an "insignificant" issue. We have no basis for reweighing the court's credibility determination or revisiting the weight it gave to the differing testimony on this issue. If a statement of decision clearly expresses the legal and factual basis for the trial court's resolution of controverted issues, we will not imply findings that the trial court did not make. (See *Paterno v. State of California* (2003) 113 Cal.App.4th 998, 1015 [" 'When the record clearly demonstrates what the trial court did, we will not presume it did something different' "].) Accordingly, we cannot agree with Pereira that the court would have made findings favorable to him, when in fact it made specific findings against him.

## DISPOSITION

The judgment is affirmed. Krizan Associates, Inc. is awarded its costs on appeal.

11

                                        O'ROURKE, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.