Filed 9/25/25 Certified for Publication 10/17/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SARAH GURGANUS,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>IGS SOLUTIONS LLC,<br><br>     Defendant and Appellant. | A170738<br><br>(Solano County<br>Super. Ct. No. CU23-04101) |

IGS Solutions LLC (IGS) appeals from the trial court's denial of its motion to compel arbitration of a lawsuit brought by its former employee, Sarah Gurganus. IGS contends the trial court erred by concluding the arbitration agreement was unconscionable and in refusing to sever the offending provisions. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

IGS provides employee management services for various operational entities, including some retail locations. IGS employed Gurganus at a California facility between September 2021 and April 2023.

When Gurganus began working for IGS in September 2021, she logged into the company's online portal and filled out onboarding documents, none of which included an agreement to arbitrate or mention of arbitration.

1

*Subsequent Agreements*

On February 20, 2022, about five months into her employment at IGS, Gurganus electronically signed numerous additional employment documents in the company's online portal. Among those documents were an agreement to arbitrate (Arbitration Agreement), a "Voluntary Dispute Resolution Policy," and a "Confidentiality and Non-Disclosure Agreement" (CND).

The Arbitration Agreement provides in relevant part: "Employee and the Company . . . mutually agree to resolve by final and binding arbitration any dispute, claim or controversy, including but not limited to those related to Employee's employment with or termination of employment by the Company, . . . [¶] . . . [¶] [and] give up each of their rights to trial by jury for the claims covered by this Agreement." The Arbitration Agreement excludes certain claims from arbitration, including those "that, as a matter of law, cannot be resolved by arbitration, such as . . . claims seeking injunctive or declaratory relief regarding use or unauthorized disclosure of confidential information."

Additionally, the Arbitration Agreement contains a confidentiality provision, stating that "[n]o party may disclose any information to any other party not involved in the arbitration hearing unless written approval has been given by the other party."

The eleventh paragraph of the Arbitration Agreement states arbitration is not a required condition of employment and the signor may choose not to sign the agreement or, within 30 days of signing it, may opt out by notifying IGS in writing.

It also contains an integration clause stating it is "the entire agreement between the Employee and the Company regarding dispute resolution and

this Arbitration Agreement supersedes any and all prior agreements regarding this issue."

The Voluntary Dispute Resolution Policy is a distinct document, which, contrary to the Arbitration Agreement, provides that "*any* dispute" (italics added) between Gurganus and IGS will be decided by binding arbitration if Gurganus "sign[s] a Dispute Resolution Agreement"; it also states there will be no negative employment consequences or retaliation if Gurganus decides not to sign such an agreement.

The CND is another separate document that Gurganus signed the same day as the Arbitration Agreement and Voluntary Dispute Resolution Policy; it prevents her from disclosing certain confidential information disclosed to her for business purposes (such as trade secrets and proprietary information). Relevant here, the CND contains a dispute provision that permits IGS to enforce the CND in court: "Any disputes under this Agreement may be brought in the state courts and the Federal courts for the county in which Company's principal place of business is located, and the parties hereby consent to the personal jurisdiction and exclusive venue of these courts."

Additionally, the CND provides that, in the event of breach, and among other available remedies, IGS "will be entitled to obtain timely injunctive relief (without the posting of any bond and without proof of actual damages) under this Agreement."

The CND terminates three years after its effective date "or may be terminated by either party at any time upon thirty (30) days written notice to the other party." Unlike the Arbitration Agreement, the CND does *not* state the employee may choose not to sign the agreement or may opt out of the CND; it also does not state that signing is not a condition of employment.

Both the Arbitration Agreement and CND contain severability provisions stating generally that, if any portions of the agreements were found to be unenforceable or invalid, the offending provisions will be modified or interpreted so as to make them enforceable.

*Gurganus's Lawsuit and IGS's Motion To Compel Arbitration*

Gurganus's employment at IGS ended in April 2023.

On September 1, 2023, Gurganus filed a complaint alleging eight causes of action against IGS: (1) disability discrimination in violation of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA); (2) retaliation in violation of FEHA; (3) failure to engage in the interactive process to determine reasonable accommodations; (4) failure to provide reasonable accommodations; (5) retaliation in violation of the California Family Rights Act (Gov. Code, § 12945.2; CFRA); (6) interference with CFRA rights; (7) wrongful termination; and (8) unlawful business practices under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.).

On January 23, 2024, IGS filed a motion to compel arbitration and to dismiss or stay Gurganus's lawsuit. IGS argued all the claims in the lawsuit were subject to the Arbitration Agreement as they arose out of Gurganus's employment with IGS. IGS asserted the Arbitration Agreement was enforceable and, if the court found any provision unenforceable, that provision should be severed.

In support of the motion, IGS submitted a declaration by its director of human resources describing the process by which Gurganus signed the Arbitration Agreement and other employment documents on February 20, 2022. The declaration stated IGS requests that employees sign the agreement but does not require it, and while it allows them to opt out,

4

Gurganus had not done so. The Arbitration Agreement was attached to the declaration, but the declaration did not mention or attach the CND.

Gurganus opposed the motion on unconscionability grounds. Gurganus did not contest that she signed the Arbitration Agreement on February 20, 2022, but argued she was required to do so in an oppressive manner as a condition of continued employment, and that there was evidence of surprise in the manner it was presented to her, rendering it procedurally unconscionable. She further contended the confidentiality provision in the Arbitration Agreement and lack of mutuality in the CND—which she asserted should be read together as they were signed on the same day within the same transaction—were substantively unconscionable. Finally, Gurganus contended the unconscionability could not be cured by severance.

In support, Gurganus attached a declaration stating she was told to sign various documents as a requirement for employment and that she complied because she was not in a financial position to refuse employment. She further stated no one explained the documents to her or that she was giving up her right to file a lawsuit in court. Gurganus also attached a copy of the CND.

The court issued a tentative ruling denying the motion to compel arbitration, finding the Arbitration Agreement was both procedurally and substantively unconscionable and that severance was not warranted. The ruling stated there was "at least a modest degree of procedural unconscionability" inherent in the employment relationship as an employee lacks a meaningful opportunity to negotiate terms other than those proposed by the employer. As to substantive unconscionability, the court determined the Arbitration Agreement and CND together had the "net effect" of destroying the mutuality of arbitration, because they required Gurganus's

5

claims to go to arbitration while permitting many of IGS's potential claims to go to court. Further, the confidentiality provision restricted employees from contacting or interviewing potential witnesses outside of the formal discovery process, which also weighed in favor of finding substantive unconscionability.

At a May 10, 2024 hearing on the motion, the trial court rejected IGS's assertion that the Arbitration Agreement was voluntary merely because the document stated arbitration was not a required condition of employment and allowed Gurganus to opt out. The court found instead that suddenly asking an established employee to change a material term of her employment (as to arbitration) for no consideration showed it was not a voluntary choice and was therefore procedurally unconscionable. The court further rejected IGS's arguments as to substantive unconscionability for the reasons stated in its tentative ruling.

The court adopted the tentative ruling as its permanent order and denied the motion to compel arbitration. The court also denied IGS's request for a statement of decision—wherein IGS did not specify any controverted issue on which the request was based—stating that IGS was not entitled to a statement of decision pursuant to Code of Civil Procedure section 632.[1] IGS appealed.

## DISCUSSION

IGS challenges the trial court's determination that the Arbitration Agreement is procedurally and substantively unconscionable, its decision not to sever any unconscionable provisions, and its refusal to issue a statement of decision. We address each issue in turn and affirm.

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

6

## I. The Arbitration Agreement Is Unconscionable

"Unconscionability has both a procedural and a substantive element. [Citation.]  Procedural unconscionability ' "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." '  [Citation.]  ' "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." '  [Citation.]  Both elements must be proven, but they are evaluated on a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required' to find it unenforceable, 'and vice versa.' " (*Haydon v. Elegance at Dublin* (2023) 97 Cal.App.5th 1280, 1287 (*Haydon*).)

We review the court's findings of disputed facts for substantial evidence and its finding of unconscionability based on those facts de novo.  (*Haydon*, *supra*, 97 Cal.App.5th at p. 1287.)

### A.  Relation Between Arbitration Agreement and CND

As an initial matter, IGS asserts the trial court "improperly merged" the CND and Arbitration Agreement when conducting its analysis.  However, the trial court merely read the CND and the Arbitration Agreement together to determine the "net effect" of both agreements' terms regarding the parties' respective rights when bringing claims against the other because both agreements were presented to Gurganus at the same time.  This was not error.  (See *Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482, 490–491 (*Alberto*) [arbitration agreement and confidentiality agreement executed as part of a single transaction properly construed together where they relate to same subject matter, even though they do not refer to each other].)

IGS does not dispute that both documents were executed by Gurganus on the same day as part of the same primary transaction.  Further, both

7

documents "governed, ultimately, the same issue—how to resolve disputes arising between [Gurganus] and [IGS] arising from [Gurganus]'s employment." (*Alberto, supra*, 91 Cal.App.5th at pp. 490–491.) Accordingly, "[f]ailing to read them together artificially segments the parties' contractual relationship" and "fails to account for the overall dispute resolution process the parties agreed upon." (*Id.* at p. 491.)

We note that the Voluntary Dispute Resolution Policy provides—in contrast to the Arbitration Agreement and CND—that *all* disputes between the parties (by either side) will be decided by binding arbitration if Gurganus "sign[s] a Dispute Resolution Agreement." It therefore further confuses which claims are subject to arbitration and supports the need to read the Arbitration Agreement and CND together to understand the parties' overall dispute resolution process.

We therefore read the Arbitration Agreement and CND together when assessing unconscionability.

### B. Procedural Unconscionability

Procedural unconscionability is generally established by showing the agreement is a contract of adhesion, where a standardized contract drafted by the party with greater bargaining strength is imposed on the other party, leaving the subscribing party with only the option to adhere to the contract or reject it. (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492–493 (*Ramirez*).) Arbitration contracts imposed as a condition of employment are typically adhesive and may include elements of oppression, including when employees are required to accept an arbitration agreement in order to keep their job after they have begun working for an employer. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 126–127.)

In its briefing, IGS contends in general terms that the court erred in finding the Arbitration Agreement was procedurally unconscionable, but it fails to raise any specific arguments in support of that claim or meaningfully challenge the court's finding that the Arbitration Agreement was a contract of adhesion and has therefore forfeited that claim. (See *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 [points not stated under a separate heading and supported by reasoned legal argument and citation to authority may be deemed forfeited].[2] Instead, IGS asserts the degree of procedural unconscionability is low, requiring a high level of substantive unconscionability to prevent its enforcement.

Nonetheless, "although adhesion alone generally indicates only a low degree of procedural unconscionability, the potential for overreaching in the employment context warrants close scrutiny of the contract's terms." (*Ramirez*, *supra*, 16 Cal.5th at p. 494.) As we discuss below, scrutiny of the Arbitration Agreement and CND reveals a high degree of substantive unconscionability.

---

[2] At oral argument, IGS asserted that the Arbitration Agreement is not procedurally unconscionable and, without citing any basis for doing so, urged us to exercise our discretion to consider that argument though raised for the first time at oral argument. We decline to do so. (See *People v. Carrasco* (2014) 59 Cal.4th 924, 990 [" 'Obvious reasons of fairness militate against consideration of an issue raised initially' at oral argument."].)

## C. Substantive Unconscionability

The trial court found substantive unconscionability based on both a lack of mutuality of arbitration and the confidentiality provision in the Arbitration Agreement. IGS challenges both findings.

### 1. Lack of Mutuality of Arbitration

IGS argues the court erred by concluding there was a lack of mutuality of arbitration. We are not persuaded.

If an arbitration agreement singles out specific claims for arbitration, there must be mutuality between the parties. (*Ramirez, supra*, 16 Cal.5th at p. 495.) "Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.' " (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 117 (*Armendariz*).)

Lack of mutuality exists when an arbitration agreement directs a wide range of claims that would typically be brought by an *employee* into arbitration, but specifically excludes from arbitration claims that would typically be brought by an *employer*, including claims related to intellectual property rights and those for equitable relief related to unfair competition or the disclosure of trade secrets or confidential information. (*Ramirez, supra*, 16 Cal.5th at pp. 498–500.) Hence, the trial court correctly found there was a lack of mutuality in the Arbitration Agreement and CND as claims that are typically brought by an employee are forced into arbitration while claims that are more likely to be brought by IGS may be brought in court. (*Ibid*.)

10

Specifically, the Arbitration Agreement requires any employment-related dispute to be sent to arbitration and lists various claims that are more likely to be brought by an employee, such as "tort claims; benefits claims; family or medical leave claims; claims of discrimination, retaliation, or harassment under federal or state law; claims of wrongful termination; claims for unpaid wages, reimbursements, meal and/or rest breaks; . . . and[] any other claim that could be brought under local, state, or federal employment statutes or common law."

On the other hand, the Arbitration Agreement expressly excludes claims that are more likely to be brought by IGS against its employees, such as "claims seeking injunctive or declaratory relief regarding use or unauthorized disclosure of confidential information." In addition, the CND permits *any* claims under that agreement—i.e., those related to intellectual property rights and the disclosure of confidential information and trade secrets—to be brought in court.

In *Ramirez*, the California Supreme Court concluded an arbitration agreement with similar covered and excluded claims to the Arbitration Agreement here lacked mutuality. (*Ramirez*, *supra*, 16 Cal.5th at pp. 498–500.) The Court noted that such agreements have been found to be substantively unconscionable "because they 'compel[led] arbitration of the claims employees are most likely to bring' and 'exempt[ed] from arbitration the claims [the employer] is most likely to bring against its employees.' " (*Id*. at pp. 497–498, quoting *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 176, and citing *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 724–726.) We, too, conclude the covered and excluded claims under the Arbitration Agreement lack mutuality for the same reason—which is even further reinforced by the breadth of claims excluded from arbitration under the

11

CND—thereby supporting the trial court's finding of substantive unconscionability.

In arguing to the contrary, IGS asserts the excluded claims in this case are akin to those in *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237 (*Baltazar*), where the California Supreme Court found the arbitration agreement was not unconscionable. In that case, the agreement provided that either party could seek *provisional* relief, including a temporary restraining order or preliminary injunction, pursuant to section 1281.8. (*Baltazar*, at p. 1241.) The Court concluded the "provisional relief clause does no more than recite the procedural protections already secured by section 1281.8[, subdivision (b)]," and was therefore not unfairly one-sided. (*Baltazar*, at p. 1247.)

Here, by contrast, the Arbitration Agreement's carve-out for injunctive and declaratory relief is not limited to provisional relief and therefore exceeds the protections offered by section 1281.8. (*Ramirez*, *supra*, 16 Cal.5th at p. 499.) Like in *Ramirez*, there is a lack of mutuality because the agreement "excludes *any* request for injunctive relief, including one for a permanent injunction, related to unfair competition or unauthorized use of trade secrets or confidential information," which is more likely to be initiated by the employer. (*Ibid.*, italics added.) The CND goes even further by excepting all claims related to confidential information and is not limited to only injunctive or declaratory relief.

Additionally, and making the availability of remedies even more one-sided, the CND specifically allows IGS to seek injunctive relief "without the posting of any bond and without proof of actual damages." Several courts have found that similar provisions, which go beyond merely permitting provisional injunctive relief and instead "authorize[] the stronger party to

12

obtain injunctive relief without establishing all of the essential elements for the issuance of an injunction," lack mutuality and are substantively unconscionable. (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 250; accord, *Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 451 [injunctive relief provisions that waive bond and requirement to show irreparable harm substantively unconscionable]; *Alberto*, *supra*, 91 Cal.App.5th at p. 492 [provisions that waive employer's need to obtain bond or show irreparable harm, and require an employee to consent to immediate injunction, unconscionable as they "exceed the legitimate 'margin of safety' for the employer and are not mutual"].) We agree with those cases and find the provision lacks mutuality.

Although IGS suggests the one-sided nature of the excluded provisions serves its legitimate need to protect confidential information, it fails to provide a justification as to why a provisional remedy, such as the one found conscionable in *Baltazar*, would be insufficient to do so, and it offers no explanation for why the even greater carve-out in the CND is justified. Moreover, IGS does not assert any legitimate commercial need for the CND's provision permitting it to seek an injunction without meeting all the essential elements for an injunction, and we can discern no such legitimate need. (*Lange v. Monster Energy Co., supra*, 46 Cal.App.5th at p. 451.)

Accordingly, we conclude the lack of mutuality is substantively unconscionable to a high degree as IGS has failed to provide a justification for such expansive carve-outs in its favor. (See *Ramirez*, *supra*, 16 Cal.5th at p. 500 ["In the absence of a cognizable justification, . . . we 'must assume' the Agreement's lack of mutuality is unconscionable."].)

## 2. Confidentiality Provision

IGS contends the trial court erroneously found the confidentiality provision in the Arbitration Agreement "would preclude any employee such as [Gurganus] from contacting or interviewing any potential witnesses outside of the formal discovery process," and that it was therefore substantively unconscionable under *Haydon*, *supra*, 97 Cal.App.5th 1280. According to IGS, the court misconstrued the confidentiality provision, which it asserts extends only to "confidentiality between the parties as to the arbitration hearing itself" but does not prevent Gurganus from contacting or interviewing a third party as part of the discovery process.

In *Haydon*, a confidentiality provision was found unconscionable that barred the parties from " ' "disclos[ing] the existence, content, or results of the arbitration" ' " because it "would restrict the plaintiff from gathering information informally, increasing his or her costs unnecessarily and 'defeat[ing] the purpose of using arbitration as a simpler, more time-effective forum for resolving disputes.' " (*Haydon*, *supra*, 97 Cal.App.5th at p. 1290, quoting *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1066 (*Ramos*).)

Similarly, and contrary to IGS's assertion, the plain language of the confidentiality provision here supports the trial court's finding that it would broadly limit Gurganus from conducting informal discovery. Specifically, the provision prohibits either party from "disclos[ing] any information to any other party not involved in the arbitration hearing unless written approval has been given by the other party." Hence, "the practical impact" of the confidentiality provision is that Gurganus would be in violation if she attempted to informally contact or interview *any other party*—including by providing *any* information related to her claims to possible witnesses—unless

14

doing so as part of the formal discovery process. (*Ramos*, *supra*, 28 Cal.App.5th at p. 1066.)[3]

Just as in *Haydon*, we find unavailing IGS's reliance on *Woodside Homes of Cal., Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, and *Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, disapproved on other grounds in *Ramirez*, *supra*, 16 Cal.5th at pages 505–506, as those cases "considered narrower provisions requiring only the proceedings themselves to remain confidential."[4] (*Haydon*, *supra*, 97 Cal.App.5th at p. 1290.)

In sum, the practical effect of the confidentiality provision here is akin to those found unconscionable in *Haydon* and *Ramos*, and we conclude it is substantively unconscionable. When considered under the sliding scale approach in combination with the high degree of substantive unconscionability due to the lack of mutuality (section I.C.1., *ante*) and the procedural unconscionability present in a contract of adhesion (section I.B., *ante*), the trial court did not err in finding the Arbitration Agreement unconscionable.

---

[3] Accepting IGS's contention that the confidentiality provision could be read more narrowly (to prevent disclosure only of information related to the arbitration hearing itself) demonstrates the provision is at best ambiguous. To the extent it is ambiguous, any ambiguity "must be construed against the drafting employer and in favor of the nondrafting employee" where, as here, the agreement was prepared entirely by the employer. (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 248.)

[4] We also find IGS's reliance on *Poublon v. C.H. Robinson Company* (9th Cir. 2017) 846 F.3d 1251 unconvincing, as that case expressly relied upon *Sanchez v. Carmax Auto Superstores California, LLC*, *supra*, 224 Cal.App.4th 398. In any event, unlike *Haydon* and *Ramos*, *Poublon* is not binding on this court.

## II. Trial Court's Refusal To Sever Was Not Abuse of Discretion

IGS argues the trial court abused its discretion by declining to sever any unconscionable terms. We review the trial court's decision for abuse of discretion (*Armendariz, supra*, 24 Cal.4th at p. 124) and conclude there was none.

If a trial court finds a contract or any provisions therein to be unconscionable, the court has the discretion to either refuse to enforce the entire agreement if the agreement is permeated by unconscionability, or to sever the unconscionable portion and enforce the remainder of the contract. (*Armendariz, supra*, 24 Cal.4th at pp. 121–122; Civ. Code, § 1670.5, subd. (a).) Where an arbitration agreement contains more than one unlawful provision, those "multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage," supporting a finding that the arbitration agreement is "permeated by an unlawful purpose." (*Armendariz*, at p. 124.)

The trial court found that, as there was more than one substantively unconscionable provision, severance was not warranted. It cited *Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 639, for the proposition that, where there is more than one unlawful provision, an arbitration agreement can be considered permeated by unconscionability. Thus, we presume the court found the Arbitration Agreement was permeated by unconscionability, and we see no abuse of discretion in that finding. (See *Haydon, supra*, 97 Cal.App.5th at p. 1292.)

## III. Any Error in Court's Refusal To Issue a Statement of Decision Was Harmless

Finally, IGS argues the trial court erred by denying its request for a statement of decision. IGS relies on *Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 689, where Division Five of this court held that, "at least where there is an adjudication of a question of fact by the court in deciding a petition to compel arbitration, a request for a statement of decision in the *manner* required by section 632 obligates the court to issue one."

Even assuming, arguendo, IGS made a proper request for a statement of decision and that the trial court erred by denying that request, we would find any error harmless as the trial court's tentative and oral rulings were sufficient to permit adequate appellate review. (See *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1116; cf. *Metis Development LLC v. Bohacek*, *supra*, 200 Cal.App.4th at p. 688 [statement of decision for hearing on petition to compel arbitration needed "to enable meaningful appellate review"].)

### DISPOSITION

The order denying IGS's motion to compel arbitration is affirmed. Gurganus shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

17

PETROU, J.

WE CONCUR:

TUCHER, P. J.

FUJISAKI, J.

A170738 / *Gurganus v. IGS Solutions LLC*

18

Filed: 10/17/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SARAH GURGANUS,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>IGS SOLUTIONS LLC,<br><br>     Defendant and Appellant. | A170738<br><br>(Sonoma County<br>Super. Ct. No. CU23-04101) |

THE COURT:**

     The written opinion which was filed on September 25, 2025, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is ordered published in the official reports.

Dated: __10/17/25_____     ____Tucher, P.J.___
                                                  Presiding Justice

---

** Tucher, P.J., Petrou, J., and Fujisaki, J.

Trial Court:      Solano County Superior Court

Trial Judge:      Hon. Stephen Gizzi

Counsel:      Fisher & Phillips, Todd B. Scherwin, Christopher D. Chaplin, Danielle Zobel and Cindy A. Kaoud for Defendant and Appellant

                Falakassa Law, Joshua Falakassa; and Bokhour Law Group, Mehrdad Bokhour for Plaintiff and Respondent

2